Judith C. BOLTON et al.

v.

Brian J. CAINE et al.

Supreme Judicial Court of Maine.

Argued Sept. 11, 1987.
Decided May 25, 1988.

Sandra Hylander Collier (orally), Jill A. Culver, William Silsby, Silsby & Silsby, Ellsworth, for plaintiffs.

Paul F. Macri (orally), Jack H. Simmons, Berman, Simmons & Goldberg, Lewiston, for Cruickshank.

Steven J. Mogul (orally), Jules L. Mogul, Gross, Minsky, Mogul & Singal, Bangor, for Caine.

Before NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The plaintiffs, Judith Bolton, the personal representative for the estate of Margery M. McDonald, the decedent, and Robert A. McDonald, the husband of the decedent, appeal from a judgment of the Superior Court, Hancock County, dismissing their complaint as barred by the applicable statute of limitations.[1] The plaintiffs allege that, during the course of treating the decedent for a fractured hip and wrist, the defendant physicians negligently failed to inform her of a possible cancerous lesion evident on her x-rays. Because we determine that the "discovery rule" for "foreign object" malpractice adopted in *Myrick v. James*, 444 A.2d 987 (Me.1982), should be extended to this case involving a physician's diagnostic malpractice, we vacate the judgment.

The facts as alleged in the plaintiffs' complaint are as follows. Margery McDonald, a California resident, fell and broke her right hip and wrist on October 7, 1983, while visiting in Bar Harbor. On the same day, Dr. Brian J. Caine, a local physician from whom Mrs. McDonald sought treatment, referred her to Dr. Frank J. Cruickshank, a radiologist, who took x-rays of Mrs. McDonald's chest, right hip and right wrist. In interpreting the chest x-ray, Dr. Cruickshank observed an ill-defined density in the upper lobe of the left lung and noted in writing that further x-rays should be taken, when Mrs. McDonald could better tolerate them, in order to exclude the possibility of a "coin lesion" in the upper left lobe. This information was transmitted to Dr. Caine, but neither physician communicated this information to the patient or to any other physicians.

---

1. 14 M.R.S.A. § 753 (1980) provides:
   Actions for assault and battery, and for false imprisonment, slander, libel and mal-practice of physicians and all others engaged in the healing art shall be commenced within 2 years after the cause of action accrues.

Mrs. McDonald returned to California. On or about July 19, 1984, she discovered that she suffered from a cancerous lesion in the upper lobe of the left lung. This condition caused her death on June 17, 1985. The plaintiffs claim that Mrs. McDonald first learned of Dr. Cruickshank's critical x-ray findings when her California physician informed her of them on November 20, 1984. By November 28, 1984, Mrs. McDonald had been apprised of facts sufficient to alert her that professional malpractice might have occurred.

The plaintiffs filed and served upon the defendants, Dr. Brian J. Caine and Dr. Frank J. Cruickshank, the mandatory notices of claim pursuant to the Maine Health Security Act, 24 M.R.S.A. § 2903 (Supp. 1987). This civil action was commenced by the filing of a complaint on July 21, 1986, almost three years after the x-rays were taken but less than two years from the date that the decedent learned of Dr. Cruickshank's x-ray findings.

The Superior Court granted the defendants' motions to dismiss the complaint on the ground that it was barred by the applicable two-year statute of limitations and the plaintiffs appealed.

14 M.R.S.A. § 753, the statute of limitations applicable to plaintiffs' malpractice cause of action,[2] provides that actions against physicians must be commenced within two years from the accrual of the cause of action. The general rule in Maine is that the cause of action accrues at the time of the wrongful act producing the alleged injury. *Chiapetta v. Clark Assocs.*, 521 A.2d 697, 699 (Me.1987); *Myrick*, 444 A.2d at 994.

In *Myrick*, we held that a surgical malpractice action involving a foreign object negligently left in a patient's body accrues, for purposes of determining the commencement of the statute of limitations, when the patient discovers, or reasonably should discover, the presence of the foreign object left in the body. *Myrick*, 444 A.2d at 996.

In doing so, we overruled *Tantish v. Szendey*, 158 Me. 228, 182 A.2d 660 (1962).

Subsequent to *Myrick*, in *Box v. Walker*, 453 A.2d 1181, 1183 (Me.1983), the question whether the discovery rule of *Myrick* would be applied to malpractice involving other than foreign object cases was left open for case by case adjudication.

In *Myrick* we said that a statute of limitations represented a balancing of the right of an injured plaintiff to pursue a meritorious claim against a defendant's rights to repose and protection from stale claims, with the difficulties of faded memories or unavailable witnesses and lost evidence. *Myrick*, 444 A.2d at 994. In weighing those interests, we were mindful of the confidential relationship existing between a patient and her surgeon, resulting in great reliance being placed in the surgeon, and the catastrophic losses resulting from foreign object malpractice. We concluded that the general rule of the cause of action accruing at the time of the negligent act worked "a manifest injustice in foreign object surgical malpractice cases ... where a patient, through no personal fault or failure of diligence, is unaware that her sutures hide a foreign object until the two-year period in which to bring an action has elapsed." *Myrick*, 444 A.2d at 995.

Defendants point out that the negligent diagnosis cases are different, result in injury less clearly defined, involve more questions of professional judgment and discretion than foreign object cases, and, unlike foreign object cases, always require expert medical testimony. Moreover, they assert, the credibility of the plaintiff is more apt to be crucial in the negligent diagnosis cases. Defendants further argue that the application of the discovery rule to negligent diagnosis cases would lead to fraudulent, as well as stale, claims and should compel us to limit the discovery rule to foreign object cases. *See Robinson v. Weaver*, 550 S.W. 2d 18, 21–22 (Tex.1977).

Many states, however, have rejected the rationale of *Robinson* and applied the dis-

---

**2.** For all actions filed, or for which a notice of claim is filed under section 2903, on or after August 1, 1988, the statute of limitations for physicians and others engaged in the healing art is set out in 24 M.R.S.A. § 2902. P.L.1985, ch. 804, §§ 13, 22.

covery rule to the medical diagnosis case. *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983); *Moran v. Napolitano*, 71 N.J. 133, 363 A.2d 346 (1976); *Toth v. Lenk*, 164 Ind.App. 618, 330 N.E.2d 336 (1975); *Frohs v. Greene*, 253 Or. 1, 452 P.2d 564 (1969); Prosser and Keeton, *Law of Torts* § 30 (5th ed. 1984). We join those states in declining to make the application of the discovery rule solely dependent on the type of evidence that may be produced at trial. The reasons compelling the application of the discovery rule to foreign object surgical malpractice are equally applicable to this case involving negligent diagnosis of a cancerous lesion.

The plaintiff-patient in this case, as in *Myrick*, had reason to rely on the defendants to correctly diagnose and inform her of a lesion appearing on an x-ray, and the alleged results of that failure are as catastrophic as they were for Mrs. Myrick. Because of the "inherent complexity of symptomatology and subsequent diagnosis [plaintiff was placed] in a position of blameless ignorance as to the cause of her malady and suffering." *Myrick*, 444 A.2d at 995, citing *Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458, 463 (1980). *Franklin* involved a failure to diagnose and communicate to the patient abnormal x-ray findings that were the early manifestations of Hodgkin's disease, which the plaintiff was later diagnosed as having. Moreover, as was the case in *Franklin*, the presence here of tangible x-ray evidence reduces the risk of a more difficult to defend spurious claim.

In citing *Franklin* we were aware of the similarities between the foreign object and this type of diagnostic malpractice case. In both the plaintiffs are blamelessly ignorant of their latent medical conditions, and their resulting failure to seek medical help may cause catastrophic medical consequences. Plaintiff-patients in diagnostic malpractice cases of this type should have

a full two years from the date the negligence is discovered, or with the exercise of reasonable diligence should have been discovered, to pursue any legitimate claim. *See Myrick*, 444 A.2d at 996.[3]

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

**3.** We are aware of the legislative enactment of P.L.1985, ch. 804, §§ 13, 22 amending 24 M.R.S. A. § 2902 (Supp.1987), establishing a three-year statute of limitations for all medical malpractice cases and limiting the discovery rule to foreign object cases. Since it applies only to actions filed, or for which notices of claim are filed under section 2903, on or after August 1, 1988, the amended section 2902 does not apply to the instant case.