**John ARSENAULT**

v.

**H. Winston KIPP.**

Supreme Judicial Court of Maine.

Argued Sept. 19, 1989.
Decided Oct. 26, 1989.

Edward Rabasco, Paul R. Dionne (orally), Norman R. Croteau, Dionne, Croteau & Gosselin, Lewiston, for plaintiff.

William D. Robitzek (orally), Kaighn Smith, Jr., Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

John Arsenault appeals from a judgment of the Superior Court (Androscoggin County, *Chandler, J.*) dismissing his complaint seeking damages for the alleged professional malpractice of H. Winston Kipp in the medical care of Arsenault on the ground that it was barred by the statute of limitations.[1] We affirm the judgment of the trial court.

## I

The record reflects the following undisputed facts: On January 30, 1985, Arsenault fell into a grease pit at his place of work, fracturing his right patella and suffering various injuries to his ribs and lower extremities. He was treated by the Kennebec Valley Medical Center's emergency room and then referred to Dr. Kipp. Several times during the course of his treatment by Dr. Kipp, Arsenault complained of soreness and discoloration in his right leg and chest pain. After examining Arsenault's leg, Dr. Kipp allegedly incorrectly diagnosed Arsenault's condition as phlebitis and prescribed treatment for that condition. On March 3, 1985, Arsenault suffered a pulmonary embolism. He was treated by Dr. Jeffrey Palmer. In July or August of 1985, Dr. Palmer advised Arsenault that there had been "some mismanagement" in the care of his initial injuries, but did not elaborate regarding possible responsibility. After receiving this information, Arsenault engaged an attorney on September 25, 1985. His counsel requested further information from Dr. Palmer concerning Arsenault's previous treatment by Dr. Kipp, but Dr. Palmer declined to offer an opinion, stating that "[w]hether any form of treatment would have prevented his pulmonary emboli is not my place to speculate as I am not an orthopedic surgeon."

Arsenault contacted an orthopedic surgeon, Dr. Wayne Moody, in December, 1985, and again in February, 1986. In May, 1986, Dr. Moody agreed to review Arsenault's medical records. Pursuant to 24 M.R.S.A. § 2903 (Supp.1988),[2] a notice

---

1. Because matters outside the pleadings were presented to and not excluded by the trial court, the defendant's motion to dismiss shall be treated as one for summary judgment. M.R.Civ.P. 12(c).

2. 24 M.R.S.A. § 2903 provides in pertinent part that no action for professional negligence may be commenced until the plaintiff has served upon the person accused of professional negligence "written notice of claim setting forth, under oath, the professional negligence alleged

of claim was served on Kipp on January 16, 1987. Dr. Moody provided Arsenault with his assessment of Dr. Kipp's treatment of Arsenault on January 23, 1987.

Pursuant to the Mandatory Prelitigation Screening statute, 24 M.R.S.A. §§ 2851–2859 (Supp.1988), a prelitigation panel chairman was appointed on February 9, 1987. Many delays ensued in the proceedings before the panel, including motions for continuances by both parties, failure of panel members to appear and difficulties with witnesses. The prelitigation hearing eventually took place on April 27, 1988, with the panel unanimously declaring Arsenault's claim to be meritorious. Arsenault then filed a complaint against Dr. Kipp on May 25, 1988, over three years from the date of the original injury and over one year from the service on Dr. Kipp of the notice of claim. By his answer, Kipp asserted the statute of limitations as an affirmative defense and filed a motion to dismiss the complaint on that ground. After a hearing, the Superior Court granted Kipp's motion and Arsenault appeals.

II

■ Arsenault first contends that his cause of action did not accrue until he received Dr. Moody's report dated January 23, 1987, and the filing of his complaint on May 25, 1988 was therefore timely. Arsenault argues that because Dr. Kipp misdiagnosed his original leg injury as phlebitis instead of a deep venous thrombosis that eventually caused the pulmonary embolism, he did not know that medical malpractice may have occurred until he received Dr. Moody's report. We disagree.

As we have previously observed, "[t]he formulation of a statute of limitations represents a balance of several competing interests." *Myrick v. James*, 444 A.2d 987, 994 (Me.1982). It balances the right of a plaintiff to seek relief through the courts with the need to grant a defendant eventual *repose and protection from claims*

made stale "by faded memories, dead or otherwise unavailable witnesses, and lost or destroyed evidence." *Id.*

A claim of medical malpractice occurring before August 1, 1988, is governed by 14 M.R.S.A. § 753 (1980) [3] which requires that "[a]ctions for ... malpractice of physicians ... shall be commenced within 2 years after the cause of action accrues." In Maine the general rule is that the cause of action accrues at the time of the alleged wrongful act producing the claimed injury. In *Myrick*, we allowed a narrow exception to the general rule in cases "where a patient, through no personal fault or failure of diligence, is unaware that her sutures hide a foreign object, until the two year period in which to bring an action has elapsed." *Id.* at 995. Under such circumstances, we held that the two-year period accrues "from the moment when the patient **knows or reasonably should know** that the defendant had permitted a foreign object to remain in [his] body...." *Id.* at 996 (emphasis added).

In *Bolton v. Caine*, 541 A.2d 924 (Me. 1988), we extended this narrow exception to a claim for the negligent medical diagnosis of a cancerous lesion. We noted that approximately fourteen months had elapsed from the date of the wrongful act which had produced the alleged injury and the date that "[the patient] had been apprised of facts sufficient to alert her that professional malpractice might have occurred." *Id.* at 925. *See also Matson v. Babcock et al.*, 565 A.2d 312 (Me.1989). When the historical facts are conceded and the only issue remaining is the legal significance of those facts, then only a question of law is presented. *See Bolton*, 541 A.2d 924.

In the present case, Arsenault's affidavit reveals that Dr. Palmer informed him that there was "some mismanagement" of his case as early as July or August of 1985. This information led him in September 1985

---

and the nature and circumstances of the injuries and damages alleged...."

3. 24 M.R.S.A. § 2902 (Supp.1988) now mandates a three-year statute of limitations for all

medical malpractice cases. Since it applies only to actions filed on or after August 1, 1988, the amended section 2902 does not apply to the instant case. P.L.1985, ch. 804, §§ 13, 22.

to retain an attorney to pursue his claim. Arsenault cannot now claim that it was not until he received Dr. Moody's report of January 23, 1987 that he was "apprised of facts sufficient to alert [him] that professional malpractice might have occurred." *Bolton,* 541 A.2d at 925. Accordingly, we hold on the facts of this case that the trial court properly determined that Arsenault's cause of action against Dr. Kipp accrued at the time Dr. Palmer advised Arsenault of "some mismanagement" in the care of his initial injuries.

### III

■ Arsenault next contends that the time period within which to file his complaint was extended under the provisions of the Mandatory Prelitigation Screening and Mediation statute, 24 M.R.S.A. §§ 2851–2859 (Supp.1988). This enactment was designed to "identify claims of professional negligence which merit compensation" and "to encourage early withdrawal or dismissal of nonmeritorious claims." *Id.* § 2851(1)(A), (B). This is accomplished by court-appointed panels composed of physicians and attorneys who together assess individual claims. *Id.* § 2852. Under this procedure, the statute of limitations is "tolled from the date upon which notice of claim is served until 30 days following the day upon which the claimant receives notice of the findings of the panel ... or 175 days after service of the notice of claim pursuant to section 2903, **whichever first occurs.**" *Id.* § 2859 (emphasis added).

Arsenault served Kipp with the statutory notice of claim on January 16, 1987. Under the plain language of section 2859, because the panel did not make any findings within 175 days after the service of notice on Kipp, that number of days would be added to the two-year limitation period. The addition of 175 days extended the limitation period from the date of Dr. Palmer's advice to Arsenault until sometime in February or March, 1988.[4] By contrast, Arsenault filed his complaint on May 25, 1988.

■ We find no merit in the further contention of Arsenault that the time periods established in section 2859 may be modified under section 2853(7), which states that the prelitigation panel chairman "may extend any time period under this subchapter for good cause." He argues that the panel chairman implicitly extended the time for filing the complaint because of the extensive delays in the panel proceedings.

We have previously stated that the provisions of a statute are to be construed harmoniously so as not to render ineffective particular provisions. *State Soc'y for the Protection of Animals v. Warren,* 492 A.2d 1259, 1263 (Me.1985); *Faucher v. City of Auburn,* 465 A.2d 1120, 1124 (Me. 1983); *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475, 480 (Me.1982). Section 2853(5) makes plain "[t]he panel has no jurisdiction to hear or decide, absent the agreement of the parties, dispositive legal affirmative defenses, except comparative negligence." The record reveals no agreement by the parties to allow the panel or its chairman to make any determination relative to the defendant's affirmative legal defense of the statute of limitations.

The drafters of the prelitigation screening statute apparently foresaw unanticipated delays in the operation of some panels. Section 2859 also provides that "[a]fter the passage of 175 days, the claimant may bring suit if the panel has not rendered a decision, but after the claimant's filing of a complaint all further proceedings in the case shall be stayed until a decision of the panel is made." In situations of extended delay by the panel, a claimant may preserve his claim beyond 175 days by the simple expedient of filing a complaint. This, Arsenault failed to do.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and CLIFFORD, HORNBY and COLLINS, JJ., concurring.

---

**4.** Although there is no dispute that Dr. Palmer advised Arsenault of "some mismanagement" of his injuries in July or August of 1985, no definitive date appears in the record. However, because Arsenault did not file his complaint against Kipp until May 25, 1988, a more definite date is not necessary to our decision.

ROBERTS, Justice, concurring.

I agree that the plain meaning of the Maine Health Security Act requires the dismissal of Arsenault's complaint pursuant to the statute of limitations contained in section 2859. As the Court's opinion states at 99, the statute of limitations balances the right of a plaintiff to seek relief against the need to grant a defendant eventual repose and protection from stale claims. I write separately in order to call to the attention of the Legislature that the statute fails to serve that purpose in the case at bar. The need to grant the defendant repose and protection from a stale claim effectively ended on January 16, 1987 when Dr. Kipp received the notice of claim. After that date the doctor had all of the information that a civil complaint need provide. Indeed, the court record contains nearly six pages of docket entries before the filing of the complaint in May, 1988. These entries include the voluntary dismissal of "this case" against two co-defendants. Even though Dr. Kipp had notice of the claim and the prelitigation panel unanimously declared his medical malpractice claim to be meritorious, Arsenault's right to seek relief in the Superior Court has been terminated. The only purpose served by the application of the statute of limitations in these circumstances is to protect the defendant against a timely and meritorious claim.