Carol Ann CLOUTIER and Edward F. Cloutier, Plaintiffs,

v.

DALKON SHIELD CLAIMANTS TRUST, Defendant.

Civ. No. 92–170–P–H.

United States District Court, D. Maine.

Feb. 26, 1993.

Robert H. Furbish, Smith & Elliot, P.A., Saco, ME, for plaintiffs.

Harold J. Friedman, Karen Frink Wolf, Friedman & Babcock, Portland, ME, for defendant.

## MEMORANDUM OF DECISION

HORNBY, District Judge.

The plaintiffs filed their complaint in Maine state court in 1982, alleging that Carol Ann Cloutier had been injured by a Dalkon Shield intra-uterine device in 1972. A.H. Robins Co., Inc. answered the complaint and asserted an affirmative defense based upon the statute of limitations. Little, if anything, happened in state court before the A.H. Robins Chapter 11 Bankruptcy in the Eastern District of Virginia in 1985. All proceedings were then automatically stayed in accordance with 11 U.S.C. § 362(a). Not until April 6, 1992, did the United States District Court for the Eastern District of Virginia certify that Carol Ann Cloutier could proceed with the Maine lawsuit.

On May 6, 1992, the Dalkon Shield Claimants Trust, successor-in-interest to A.H. Robins, removed the Maine lawsuit from state court to this court. The plaintiffs then amended their complaint to conform to the Virginia Bankruptcy Court's administrative order requiring that the Trust, rather than A.H. Robins, be named as a defendant and that any claim for punitive damages be deleted. Next, both parties moved to stay the action until December 5, 1992, so that the consortium claim of Ms. Cloutier's husband could also be certified. Immediately thereafter, on December 7, 1992, the Trust filed its answer to the amended complaint renewing the affirmative defense based upon the statute of limitations. On the same date, the Trust filed a motion to dismiss the amended complaint on that ground and to dismiss Count I, a strict liability count, on the basis that strict liability was not recognized by Maine in 1972.

So far as the statute of limitations is concerned, the Trust's motion is in reality (and I will treat it as) a motion for judgment on the pleadings. It is not a motion for failure to state a claim under Fed. R.Civ.P. 12(b)(6) because the amended complaint as drafted does state a claim. (The defendant might have elected not to raise the statute of limitations as an affirmative defense and it would then have been waived. *See* Fed.R.Civ.P. 8.) Since the Trust did raise the affirmative defense in its answer, however, it was then free to move for judgment on the pleadings.

If only the dates of Ms. Cloutier's injuries were relevant, the Trust's motion for judgment on the pleadings would have to be granted summarily. After all, the injuries began in 1972, and the action was not commenced until 1982, whereas Maine's statute of limitations is six years. *See* 14 M.R.S.A. § 752. The plaintiffs argue that their lawsuit is not time-barred, however, on two grounds: first, that Maine's so-called discovery rule applies, so that their cause of action did not accrue until Ms. Cloutier knew or reasonably should have known that her injuries were caused by A.H. Robins' actionable conduct; and second, that A.H. Robins fraudulently concealed its responsibility and that 14 M.R.S.A. § 859 therefore postponed her cause of action until she learned of the concealment, a date within the six-year statute of limitations.

## DISCOVERY RULE

Maine's statute of limitations begins to run at the time a wrongful act produces an injury, except in two limited contexts: legal malpractice cases, *Anderson v. Neal*, 428 A.2d 1189 (Me. 1981); and medical malpractice cases involving an item such as a surgical sponge left hidden in the body, *Myrick v. James*, 444 A.2d 987 (Me.1982).[1] Obviously this is not a legal malpractice case. In medical foreign object cases, the statute does not begin to run until the plaintiff discovers, or reasonably should have discovered, the presence of the object.

---

1. The Law Court initially extended the discovery rule to diagnostic malpractice involving x-rays, *Bolton v. Caine,* 541 A.2d 924 (Me.1988), as well, but Maine statutes now limit the discovery rule in medical malpractice to foreign object cases. 24 M.R.S.A. § 2902.

■ The initial injury to Ms. Cloutier allegedly caused by the wrongful acts of A.H. Robins occurred in 1972. Thus, Maine's six-year statute of limitations, 14 M.R.S.A. § 752, has already run, unless the "discovery" exception applies. A common sense reading of the amended complaint leads to the unavoidable conclusion that Ms. Cloutier knew in 1972 that her physical ailments were connected to the Dalkon Shield.[2] What she apparently did not know, according to her later-filed affidavit, is that any actionable conduct by A.H. Robins caused her injuries. In other words, she may have believed that her body was simply unusually sensitive or could not for some reason adapt to the IUD.

This is an important distinction. In the foreign object cases a plaintiff has no idea what is causing her symptoms. Ms. Cloutier, on the other hand, was clearly on notice that her injuries were somehow related to the A.H. Robins product. Apparently she did not have any evidence of *misconduct* by A.H. Robins, but she was on notice that the Dalkon Shield was involved and she could have investigated further. As a sole plaintiff she might not have been successful in uncovering the alleged wrongdoings of A.H. Robins. Nevertheless, to apply the discovery exception on that ground would mean that there would be no repose in cases where a plaintiff knew he or she was injured in connection with a defendant's product unless the plaintiff was also able at the same time to marshall his or her proof of negligence or strict liability or breach of warranty. That is a much broader exception than the Law Court has carved out. The discovery exception is premised upon the hidden nature of a plaintiff's injuries; Ms. Cloutier's injuries were not hidden.

It may seem harsh to say that the six-year statute of limitations began to run even though Ms. Cloutier had no knowledge of A.H. Robins' misconduct. But statutes of limitation are designed to achieve repose in the affairs of mankind on the premise that at some point matters must come to rest even though wrongs may go uncompensated in individual cases. I find no basis in Maine law to conclude that the Maine Law Court would delay the accrual of Ms. Cloutier's cause of action under the discovery exception once she learned her injuries were connected with her use of A.H. Robins' product—even though she was unaware of A.H. Robins' actual misconduct.

### 14 M.R.S.A. § 859

■ Ms. Cloutier also contends that A.H. Robins hid its wrongdoing and that her cause of action therefore did not accrue until its concealment came to light. Maine law has a statute specifically tolling the running of the statute of limitations in such situations.

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action....

14 M.R.S.A. § 859.

The proper procedure to advance this argument under Maine law was for Ms. Cloutier to amend her complaint as soon as the defendant raised the statute of limitations defense. In the amended complaint, Ms. Cloutier should have set forth the date she discovered the fraudulent concealment. The pleadings would then define the issues to be determined by the court. *See West-man v. Armitage*, 215 A.2d 919, 923 (Me.

---

2. The relevant paragraphs of the Amended Complaint read as follows:

7. The Dalkon Shield remained in Plaintiff CAROL ANN CLOUTIER'S uterus until it was removed by Dr. Shaw on or about October 3, 1972.

8. The Shield was removed because Plaintiff CAROL ANN CLOUTIER experienced constant cramps and bleeding during the time that the Shield was in her uterus.

9. Plaintiff CAROL ANN CLOUTIER had no gynecological problems prior to the insertion of the Dalkon Shield.

10. Immediately subsequent to the removal of the Dalkon Shield and for a period of several years thereafter, Plaintiff CAROL ANN CLOUTIER suffered from continual abdominal pain.

1966). If the date of discovery was still more than six years before Ms. Cloutier's complaint was filed, the defendant could then renew its motion for judgment on the pleadings. If the date of discovery was within six years of the complaint, then the defendant could either move for summary judgment using affidavits or depositions to overcome the allegation, or could await trial on the merits. *Id.* That approach is the proper procedure under the Federal Rules as well, for only by following those steps can the issues be focused by the pleadings.

The Trust argues that the time for any amendment by Ms. Cloutier is long past, particularly given the fact that my Scheduling Order of May 14, 1992, set a pleading amendment deadline of July 6, 1992. Ironically, the ten-year passage of time during the pendency of this lawsuit is of less significance than the Scheduling Order, which is less than a year old. The ten-year passage of time is explainable by the lack of any progress in the state court proceedings prior to the Bankruptcy proceedings and the lengthy delay during the Bankruptcy stay. Failure to comply with the Scheduling Order, on the other hand, must be justified by good cause. Fed.R.Civ.P. 16(b).

I find good cause present in the unique circumstances of this litigation. At the time the plaintiffs filed their amended complaint on July 16, 1992, it had been some ten years since the Trust's predecessor had raised its statute of limitations defense. In light of the intervening lengthy Bankruptcy proceedings, the new certification procedures imposed for pursuing claims against the Trust, the requirement that plaintiffs reformulate their cause of action and complaint, and the increased knowledge about A.H. Robins' conduct and the Dalkon Shield's consequences, I conclude that the plaintiffs were not bound to know in 1992 that the statute of limitations defense would still be pursued by the Dalkon Shield Claimants Trust. Instead, I treat the amended complaint as essentially a new start of this litigation after the bankruptcy proceedings. The Trust's answer and motion to dismiss were the first move by the defendant in this new proceeding. I find no prejudice to the Trust in permitting the plaintiffs to make a late amendment, since this same claim of tolling for fraudulent concealment has been raised in a number of cases involving the Dalkon Shield and A.H. Robins. The Trust, therefore, should possess all the information that exists concerning concealment except for particular information it may seek concerning what Ms. Cloutier knew and when she knew it.

Accordingly, under *Westman v. Armitage* and analogous federal principles, it is now appropriate for the plaintiffs to amend their complaint. If the plaintiffs wish to assert a tolling of the statute of limitations under 14 M.R.S.A. § 859, they shall file within ten (10) days their amended complaint setting forth that claim and stating the date of their discovery of their cause of action.

### STRICT LIABILITY

■ The Trust argues that, in any event, the plaintiffs' claim for strict liability must be dismissed under Fed.R.Civ.P. 12(b)(6) because Maine did not recognize strict liability until 1973, whereas the plaintiff suffered her injuries in 1972. The plaintiffs respond that under section 859 no cause of action accrued until Ms. Cloutier discovered it sometime in 1976 or later. By 1976, of course, Maine had recognized strict liability.

Section 859 permits delayed filing of a lawsuit if a potential defendant, *"liable to any action mentioned,* fraudulently conceals the cause thereof ..." (emphasis supplied). In 1972, when Ms. Cloutier first began to suffer her injuries, A.H. Robins was not "liable" to any strict liability lawsuit because Maine did not recognize strict liability. Thus, section 859 was not available to Ms. Cloutier in 1972, when she first used the Dalkon Shield and suffered injury. Any alleged fraudulent concealment by A.H. Robins is therefore irrelevant on the strict liability claim. Accordingly, the

plaintiffs do not have a cause of action under Count I.[3]

\*   \*   \*   \*   \*   \*

In accordance with the preceding analysis, the defendant's motion to dismiss for failure to state a claim is treated in part as a motion for judgment on the pleadings and is GRANTED IN PART and DENIED IN PART as follows:

1. Count I, seeking recovery under Maine's strict liability statute, 14 M.R.S.A. § 221, is DISMISSED.

2. To the extent the plaintiffs' claim is based on the judicially-created discovery rule to avoid the statute of limitations, the defendant's motion is GRANTED.

3. Provided that the plaintiffs file an amended complaint within ten (10) days claiming fraudulent concealment under 14 M.R.S.A. § 859 and a discovery of that concealment within six years of the filing of the complaint, the motion is otherwise DENIED.

In addition, the plaintiffs' motion for enlargement of time is GRANTED: the discovery deadline is extended to June 14, 1993, to permit the plaintiffs to engage in discovery concerning the alleged fraudulent concealment and the defendant to engage in discovery concerning when Ms. Cloutier discovered or should have discovered her cause of action.

SO ORDERED.

---

**3.** The plaintiffs do not argue any continuing injury theory to avoid this outcome. In any event, *Dugan v. Martel,* 588 A.2d 744, 746 (Me. 1991), would dispose of such an argument.