2008 ME 179

**Maetta DICKEY et al.**

v.

**Gerald E. VERMETTE.**

Supreme Judicial Court of Maine.

Argued: Sept. 17, 2008.

Decided: Dec. 9, 2008.

Nicholas Bull, Esq. (orally), Bradford Bowman, Esq., Thompson, Bull, Furey, Bass & MacColl, Portland, ME, for appellants.

Christopher Taintor, Esq. (orally), Norman, Hanson & DeTroy, Portland, ME, for appellee.

Julian Sweet, Esq. (orally), Berman & Simmons, Lewiston, ME, for Amicus Curiae, Maine Trial Lawyers Association.

Charles A. Harvey, Esq., Robert S. Frank, Esq., Harvey & Frank, Portland, ME, for Amicus Curiae, Maine Medical Association.

Panel: SAUFLEY, C.J., and CLIFFORD,* ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

---

* Although not available at oral argument, Justice Clifford participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

Majority: SAUFLEY, C.J., and CLIFFORD, LEVY, MEAD, and GORMAN, JJ.

Dissent: ALEXANDER, J.

Dissent: SILVER, J.

GORMAN, J.

[¶ 1]   Maetta and Todd Dickey appeal from a judgment by the Superior Court (Somerset County, *Jabar, J.*) granting Gerald E. Vermette's motion for partial summary judgment on the Dickeys' medical malpractice claims.  The Dickeys argue that the Superior Court erred when it found that the continuing course of treatment doctrine is inconsistent with, and should not be used to interpret, the statute of limitations provision in the Maine Health Security Act, 24 M.R.S. § 2902 (2007).  The Maine Trial Lawyers Association (MTLA) filed an amicus brief and presented oral argument urging us to adopt a different cause of action called the continuing negligent treatment doctrine. We affirm the Superior Court's judgment and do not reach the issue raised by the MTLA.

[¶ 2]   From 2000 to 2005, Maetta Dickey was a regular patient of Gerald E. Vermette, D.D.S.  In March 2000, a dental hygienist at the practice noticed a dark spot on an x-ray taken of Dickey's teeth. The hygienist noted that the spot was odd but did not express any serious concerns to Dickey.  Dickey continued to visit Vermette's office every three to five months for routine appointments.  During these subsequent visits, the same hygienist showed the spot to Dr. Robert E. Clukey, Jr., D.D.S., who replied that the office would "keep an eye on it."[1]  In March 2005, a second x-ray taken of Dickey's mouth showed that the spot had grown.

Vermette viewed the 2000 and 2005 x-rays at that time and referred Dickey to an oral surgeon, who diagnosed her with oral cancer.  Dickey underwent extensive surgery to remove the tumor, surrounding tissue, and part of her jawbone, and she has undergone continuing reconstructive surgery.

[¶ 3]   Dickey and her husband filed a notice of claim against Vermette on February 23, 2006, with the Superior Court.  *See* 24 M.R.S. § 2853 (2007).  They alleged medical or professional negligence and loss of consortium.  Vermette requested and received permission from a prelitigation screening panel to move for partial summary judgment in Superior Court pursuant to M.R. Civ. P. 56.  He argued that no genuine issue of material fact existed as to any claims based on acts or omissions occurring before February 23, 2003, because such claims were barred by section 2902's three-year statute of limitations.

[¶ 4]   The Dickeys argued that the court should apply the continuing course of treatment doctrine to effectively toll the statute of limitations until after Dickey's relationship with Vermette ended in 2005. The Superior Court ruled in favor of Vermette, declining to recognize the continuing course of treatment doctrine because it was inconsistent with section 2902.  Although the court noted in its judgment that the Dickeys were not precluded from bringing claims for acts or omissions that occurred after February 23, 2003, the Dickeys did not pursue such claims.  Instead, in order to immediately appeal the partial summary judgment and give this Court an opportunity to consider the applicability of the continuing treatment doctrine, the Dickeys stipulated that no act or omission occurring after February 23,

1.  The Dickeys initially named Drs. Clukey and Vermette as defendants, but they dismissed

the claims against Dr. Clukey on August 14, 2007.

2003, was a proximate cause of their injuries.

■■■■ [¶ 5] This case requires us to interpret section 2902. Statutory interpretation is a question of law, which we review de novo. *State v. Thongsavanh*, 2007 ME 20, ¶ 27, 915 A.2d 421, 427. Our primary purpose in interpreting a statute "is to give effect to the intent of the Legislature." *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 287–88. We begin by looking at the plain meaning of the statute, and, if there is no ambiguity, we do not apply rules of construction or examine legislative history. *Ashe v. Enter. Rent–A–Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159.

[¶ 6] Section 2902 provides, in relevant part:

> Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury.... This section does not apply where the cause of action is based upon the leaving of a foreign object in the body, in which case the cause of action shall accrue when the plaintiff discovers or reasonably should have discovered the harm.

24 M.R.S. § 2902.

■■■ [¶ 7] In setting a three-year period of limitations, declaring that the cause of action "accrues on the date of the act or omission giving rise to the injury" and carving out a specific exception for foreign objects, the Legislature effectively declined to adopt the continuing course of treatment doctrine. By allowing the Dickeys to bring claims for acts or omissions that occurred before February 23, 2003, simply because Maetta Dickey did not end her relationship with Vermette until March 2005, we would be imposing a judicially-created exception that is contrary to the plain meaning of section 2902. We cannot do that. *See Dasha v. Maine Med. Ctr.*, 665 A.2d 993, 996 (Me.1995) (stating that the Legislature has outlined the contours of the statute of limitations in section 2902 and has divested this Court of its responsibility to define when a medical malpractice cause of action accrues).

[¶ 8] Therefore, we agree with the Superior Court that the statute of limitations in section 2902 bars the Dickeys' claims arising from acts or omissions that occurred before February 23, 2003, and affirm the judgment granting partial summary judgment to Vermette. *See* M.R. Civ. P. 56(c).

[¶ 9] Because the Dickeys stipulated that no act or omission occurring after that date was a proximate cause of their injuries, we decline to address MTLA's argument to adopt the distinguishable "continuing negligent treatment" doctrine. Under the "continuing negligent treatment" doctrine, the limitations period would begin to run for all claims on the last act of negligence, as long as that act occurred within three years before the legal action was initiated. Given the Dickeys' stipulation, however, any discussion about this doctrine, including whether it is consistent with section 2902, is irrelevant and premature.[2]

---

**2.** Justice Silver's dissent lists two reasons why the stipulation does not bar our consideration of the continuing negligent treatment doctrine. First, it suggests that because the Dickeys stipulated only that no acts after February 23, 2003, were *a proximate cause* of injury, this Court can still consider the continuing negligent treatment doctrine because the Dickeys need only prove the four elements of negligence—duty, breach, proximate causation, and harm—for the entire continuum of treatment. We disagree. Every claim of negligence requires proof of the four elements. The continuing negligent treatment doctrine

The entry is:

Judgment affirmed.

ALEXANDER, J., dissenting.

[¶ 10] I respectfully dissent. It is black-letter medicine that when a suspicious dark spot appears on an x-ray, and cannot be otherwise explained, there should be disclosure and warning to the patient, further investigation, and forensic testing for the possibility of cancer. *See Bolton v. Caine*, 541 A.2d 924, 925–26 (Me. 1988) (failure to inform patient of possibly cancerous spot observed on lung x-ray constitutes actionable malpractice).

[¶ 11] The evidence here is undisputed that a hygienist under Dr. Vermette's supervision saw such a suspicious dark spot in an x-ray in March 2000 and that the hygienist told Maetta Dickey that an "odd or irregular" spot was observed, but said nothing further. There is also no dispute that, although Dickey visited Dr. Vermette's office every three to five months from 2000 to 2005, she was never warned about the potential significance of the suspicious dark spot and no further testing or forensic studies were ordered. This occurred despite the internal discussions within Dr. Vermette's staff that they would "keep an eye on it."

[¶ 12] In March 2005, five years after the possibly cancerous spot was identified, Dickey was referred to an oral surgeon after Dr. Vermette viewed a new x-ray and determined that the suspicious dark spot had grown. The oral surgeon diagnosed the dark spot as cancer. By then, options for limited, non-disfiguring treatment that

may have existed in 2000, 2001, or 2002 were lost. Because of the failure to exercise due care in 2000 by warning Dickey of the risk of cancer and conducting further forensic examinations, Dickey had to undergo painful, disfiguring treatment to remove the larger tumor, surrounding tissue, and part of her jaw, and she has undergone continuing reconstructive surgery.

[¶ 13] Today's opinion sends a "don't warn, don't treat" message that is contrary to good law, good medicine, and good common sense. The Court holds, in essence, that a doctor who identifies a risk of cancer in the treatment of a patient, but fails to warn the patient of the risk, will be shielded from liability for such blatantly negligent care if the doctor keeps the information from the patient and sacrifices opportunities for less painful and invasive treatment until after the statute of limitations has expired. In adopting the statute of limitations for the Maine Health Security Act, the Maine Legislature did not intend such a perverse result.

[¶ 14] The statute of limitations, 24 M.R.S. § 2902 (2007), provides that professional negligence actions must be commenced within three years after a cause of action "accrues." The statute then provides that "[ ] for the purpose of this section, a cause of action accrues on the date of the act or omission giving rise to the injury." *Id.*

[¶ 15] The "injury" here is not the existence of the suspicious dark spot, first discovered in March 2000. The "injury" for purposes of this case is the dental practice's failure in their duty of care to

requires the last act of negligence to fall within the statute of limitations, and the Dickeys cannot meet this requirement because the stipulation precludes them from introducing any evidence on causation as to acts and omissions occurring after February 23, 2003. Second, the dissent incorrectly interprets the

Dickeys' stipulation as conditional. However, the language of the joint stipulation, signed by both parties and accepted by the court, does not include a condition that the stipulation was contingent on anything, including our willingness to consider the continuing source of treatment doctrine.

disclose the practice's concerns about the suspicious spot to Dickey, their failure to engage in follow-up x-rays and forensic examinations, although the practice recognized the risk and decided to "keep an eye on it," and their failure to attempt any further treatment despite Dickey's regular three to five month visits to the practice over the next five years. Those failures to exercise due care to disclose, to monitor, and to treat were continuing over the five-year period as Dickey's condition worsened.

[¶ 16] We have not had the opportunity to address a claim of violation of a continuing duty to warn and treat in cases whose facts arose since the 1988 effective date of the present section 2902. The Connecticut Supreme Court recently addressed a case with a similar history by establishing certain standards, not to create a new cause of action, but to serve as criteria to determine whether a statute of limitations has been tolled. Thus, the Connecticut Supreme Court has held that the statute of limitations will be tolled when in "the medical malpractice context, the continuing course of conduct doctrine requires the plaintiff to prove that 'the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty.'" *Grey v. Stamford Health Sys. Inc.*, 282 Conn. 745, 924 A.2d 831, 837–38 (2007) (quoting *Witt v. St. Vincent's Med. Ctr.*, 252 Conn. 363, 746 A.2d 753, 757 (2000)).

[¶ 17] Maine has a similar provision of law that serves not to create a new cause of action, but to toll a statute of limitations when a duty to disclose is violated in circumstances, such as a doctor/patient relationship, when there is a special relationship of confidentiality and confidence between the parties. Thus, 14 M.R.S.

§ 859 (2007), fully applicable to the Maine Health Security Act statute of limitations, provides that the statute of limitations may be tolled where a plaintiff has failed to learn of a cause of action as a result of the defendant's fraud.

[¶ 18] There is no suggestion that Dr. Vermette's medical practice committed fraud by affirmative statements misleading Dickey as to her condition and the need for treatment. However, in Maine, fraud is not limited to affirmative false statements of material facts. Fraud, sufficient to toll the statute of limitations, may be committed by a failure to disclose or by silence when there is a duty to disclose. Thus, we have held that fraud is committed by failure to disclose or by silence when the plaintiff proves *in the alternative* (1) an act of concealment of the truth; or (2) a special relationship, such as a confidential or fiduciary relationship, imposing an affirmative duty to disclose; or (3) a statutory duty to disclose—or even find out and disclose—information that a defendant may not have known without the requisite inquiry. *See McGeechan v. Sherwood*, 2000 ME 188, ¶¶ 61–62, 760 A.2d 1068, 1081; *Glynn v. Atl. Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117, 120; *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 902–06 (Me.1996); *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me.1995).

[¶ 19] Here, Dickey had a special, confidential, doctor/patient relationship with Vermette and his dental practice. The dental practice saw a suspicious dark spot on an x-ray that black-letter medicine would identify as something that required disclosure of concern and further investigation and testing because of the high risk of cancer. *See Bolton*, 541 A.2d at 925–26 (recognizing confidentiality and trust in doctor/patient relationship and consequent duty to disclose and treat a spot discovered on an x-ray because of the high risk of

cancer). Although the practice, in consultation among themselves, recognized the cancer risk and the need to "keep an eye on it," the practice did not "keep an eye on it," disclose their concern to Dickey, or engage in any other actions to protect Dickey from the severe damage she has ultimately suffered. Thus, the Vermette practice's actions meet all of the criteria for fraud by failure to disclose or by remaining silent when there was an indisputable duty to disclose or investigate further.

[¶ 20] The fraud by nondisclosure, perpetrated upon Dickey, kept her in "blameless ignorance"[3] of the practice's failure of duty of care, and of the growing cancer and the risk to her for five years until ultimate disclosure in 2005. Title 14 M.R.S. § 859, applicable to 24 M.R.S. § 2902, therefore serves to toll the statute of limitations from the practice's initial discovery of the suspicious dark spot in 2000 until its disclosure in 2005. Because, by operation of 14 M.R.S. § 859, the statute of limitations is tolled based on the undisputed evidence before the Court, I would vacate the Superior Court's judgment and remand for further proceedings.

SILVER, J., dissenting.

[¶ 21] I respectfully dissent. Neither section 2902 nor the parties' stipulation precludes this Court from adopting the continuing negligent treatment doctrine. This Court should reach this issue and should recognize a cause of action for continuing negligent treatment.

[¶ 22] The stipulation presents a preliminary issue procedurally in that its interpretation determines whether the Dickeys are entitled to assert a claim under the continuing negligent treatment doctrine and consequently whether this Court should reach the merits on the issue whether to adopt the doctrine. However, the stipulation itself cannot properly be interpreted, and its effect on the Dickeys' claims cannot be determined, without first analyzing the continuing treatment doctrine. In order to determine how the stipulation should affect this case, it is necessary to understand it in light of the cause of action to which it would be applied. For that reason, I first address the three variants of the continuing treatment doctrine, why the doctrine would not operate in derogation of the Maine statute of limitations if it were adopted, and why the continuing treatment doctrine has been adopted in other jurisdictions. I then discuss the stipulation.

[¶ 23] The continuing treatment doctrine has three variants. The first variant postpones the commencement of the limitations period to the date of termination of the physician-patient relationship, even though part of the treatment during that relationship may not have been related to the condition upon which the cause of action is based. *Estate of Ewing v. Beck,* 520 A.2d 653, 659 & n. 6, 661 (Del.1987). Although this variant has been referred to as the "continuous treatment doctrine," it would be better called the "termination of relationship doctrine," to distinguish it from the second variant. *Id.*

[¶ 24] The second variant is accurately called the "continuous treatment doctrine." *Id.* at 659. Under this doctrine, the limitations period commences on the final date of all treatment provided for one condition. *Id.; Borgia v. City of New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777, 779 (1962); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis, LLC,* 519 F.3d 466, 475

---

3. *Bolton v. Caine,* 541 A.2d 924, 926 (Me. 1988) (quoting *Myrick v. James,* 444 A.2d 987, 995 (Me.1982)).

(8th Cir.2008) (tolling statute of limitations). Under the continuous treatment doctrine, the accrual date may occur at the end of a period during which non-negligent, corrective treatment was provided. *Borgia*, 237 N.Y.S.2d 319, 187 N.E.2d at 779.

[¶ 25] The third variant is the "continuing negligent treatment doctrine." *Ewing*, 520 A.2d at 661; *Caughell v. Group Health Coop. of Puget Sound*, 124 Wash.2d 217, 876 P.2d 898, 905 (1994). Under this doctrine, the cause of action accrues not at the conclusion of the entire course of treatment, but rather on the last date on which negligent treatment took place.

> When there is a continuum of negligent medical care related to a *single condition* occasioned by negligence, the plaintiff has but one cause of action—for continuing negligent medical treatment. If any act of medical negligence within that continuum falls within the period during which suit may be brought, the plaintiff is not obliged to split the cause of action but may bring suit for the consequences of the entire course of conduct.

*Ewing*, 520 A.2d at 662. In order to state a claim for continuing negligent treatment, a plaintiff must allege acts of negligent treatment that are "so inexorably intertwined that there is but one continuing wrong." *Id.*; *see also Grey v. Stamford Health Sys., Inc.*, 282 Conn. 745, 924 A.2d 831, 837 (2007) (recognizing doctrine similar to continuing negligent treatment doctrine but referring to it as "continuing course of conduct doctrine").

[¶ 26] The primary factor that distinguishes the three variants of the continuing treatment doctrine is the relevant date for purposes of determining when the limitations period begins to run.[4] In any given case, there may be no practical difference among the three variants. For example, a patient who learns that his or her treatment has been negligent may simultaneously terminate the relationship with the provider and conclude all treatment with that provider for the condition in issue, which would also bring to an end the course of negligent treatment. However, the distinctions among the variants are important in cases in which these events occur on different dates, because any action that accrues later than the final day of negligent treatment is foreclosed pursuant to section 2902.

[¶ 27] Section 2902 precludes this Court from adopting either the termination of relationship doctrine or the continuous treatment doctrine. Section 2902 ties the accrual date to the date on which a negligent act or omission occurred. The continuing negligent treatment doctrine is the only variant that is consistent with an accrual date that is linked to a negligent act or omission. Furthermore, both the termination of relationship doctrine and the continuous treatment doctrine permit the limitations period to be tolled beyond the last date of negligent treatment. The Legislature has decided that a statute of limitations may be tolled only in limited circumstances, including periods when a person is under a disability, 14 M.R.S. § 853 (2007); instances of fraudulent concealment, 14 M.R.S. § 859 (2007); and instances of foreign object surgical malpractice, 24 M.R.S. § 2902. *Dasha*, 665 A.2d at 996.

[¶ 28] Section 2902 does not, however, preclude this Court from adopting the con-

---

4. The courts and the Legislature often disregard the distinction between the postponement of an accrual date and the immediate tolling of the limitations period following accrual. Because the terminology does not affect the result, I make no distinction between the two.

tinuing negligent treatment doctrine. This doctrine does not involve any tolling of the statute of limitations. The accrual date is not extended beyond the final date on which negligent treatment occurs. As applied to cases involving a series of negligent acts or omissions, the statute is vague with respect to whether the accrual date occurs on the first date of negligent treatment, the last date, or some other date. Because the statute is vague, this Court must interpret the terms "act" and "omission" as they appear in section 2902 to determine when a cause of action for continuing negligent treatment accrues; it is a "legitimate judicial function to make law interstitially by giving meaning through judicial interpretation to vague, indefinite, or generic statutory terms...." *Myrick v. James*, 444 A.2d 987, 992–93 (Me.1982).

[¶ 29] Courts in other states have interpreted similar statutory language in a manner that permits a cause of action for continuing negligent treatment. In *Caughell*, the court held that a statute of limitations that accrues on the date of the "act or omission alleged to have caused the injury or condition" did not extinguish a judicially recognized cause of action for continuing negligent treatment. *Caughell*, 876 P.2d at 903–04, 906. Likewise, another court held that a statute of limitations that accrues on the date of the negligent "act or omission or occurrence" did not preclude a cause of action for continuing negligent treatment. *Cunningham v. Huffman*, 154 Ill.2d 398, 182 Ill.Dec. 18, 609 N.E.2d 321, 325 (1993). Although section 2902 does not include the term "occurrence," there is nothing inherently more broad or plural about the term "occurrence" than the terms "act" or "omission" used in section 2902. Any of these may be interpreted to apply to either a single event or the last in a series of events.

[¶ 30] Courts have advanced two reasons in support of recognizing a cause of action for continuing negligent treatment. First, it may not be possible to identify the specific date of a negligent act or omission that occurred during a course of treatment. *Grey*, 924 A.2d at 837. Second, public policy favors maintaining the relationship between the patient and the medical provider for the duration of treatment. *Id.*; *Caughell*, 876 P.2d at 905. Recognizing the cause of action presumes and confirms patients' reasonable reliance on their medical providers throughout a course of treatment. *Caughell*, 876 P.2d at 905. These reasons support the adoption of the continuing negligent treatment doctrine by this Court.

[¶ 31] The proof offered in an action for continuing negligent treatment differs in one respect from that in actions involving single negligent acts or omissions. As with all negligence claims, a claim for continuing negligent treatment requires a plaintiff to prove all of the elements of the cause of action, including duty, breach of duty, proximate cause, and damages. *Id.* at 906. These are the same elements that the plaintiff must prove in negligence actions generally in Maine. *See, e.g., Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951, 954. However, in a cause of action for continuing negligent treatment, the proof is modified because it is offered with respect to a series of negligent acts and omissions rather than a single negligent act or omission. *Caughell*, 876 P.2d at 906–07.

[¶ 32] To prove a breach of duty in an action for continuing negligent treatment, the plaintiff must show a series of interrelated negligent acts that occurred during the course of treatment. *Id.* The negligent acts must be part of an uninterrupted course of treatment, and must relate to the treatment as a whole, but the negligent

acts need not relate to each other. *Id.* at 907. "If a health care provider performs two procedures negligently as part of a course of treatment, the patient may allege a claim for negligent treatment even though the two procedures have no intrinsic connection to each other." *Id.* It is insufficient, however, to allege a single negligent act followed by non-negligent treatment. *Id.*

[¶ 33] Proof of proximate cause and damages over a continuum of negligent treatment is necessarily different from proof where a single negligent act or omission is alleged. In a cause of action for continuing negligent treatment, proof of proximate cause and damages is not offered independently as to each of the acts or omissions in the series, but rather as to the continuum of treatment as a whole:

> The plaintiff need not prove which negligent act caused which injury, provided that [the] plaintiff proves that the continuing negligent treatment was the proximate cause of the injury.

*Id.* In *Caughell,* the court held that it was not fatal to the plaintiff's claim that she was unable to prove which prescription caused which injury over a period of twenty years of negligent treatment: The plaintiff "need only prove that the continuing negligent treatment extended into the statutory period and that damages arose from this final portion of the negligent treatment." *Id.* at 908. *Caughell* is ambiguous in that the court held that the plaintiff need not prove causation as to individual negligent acts, and yet also seems to require proof of both proximate cause and damages as to particular acts that occurred within the period of the statute of limitations.

[¶ 34] This issue was addressed in *Cunningham,* albeit in the context of the continuum of damages rather than proximate cause. 182 Ill.Dec. 18, 609 N.E.2d at 325. The court held that it is not fatal to the claim that damages are negligible during the entire period within the statute of limitations:

> It is conceivable that the damage caused in the last four years might be either negligible or a small fraction of the harm caused over the continuum of the negligence; thus, the recovery of damages would be negligible compared to the actual injury. Surely, the law could not contemplate such an unjust result.

*Id.* This approach to damages logically applies to proximate cause as well. It is consistent with the nature of the continuing negligent treatment doctrine that duty, breach of duty, proximate cause, and damages be proven as to the continuum of negligent treatment as a whole, rather than as to each individual act or omission in the series.

[¶ 35] The stipulation addresses the element of proximate cause, stating in pertinent part:

> Although the Respondent's motion only addressed the events prior to February 23, 2003, both parties stipulate that no act or omission that occurred after February 23, 2003 was the proximate cause of an injury sustained by the Claimants. Accordingly, the Court's decision on the Respondent's partial motion for summary judgment disposes of all of the Claimant's claims against the Respondent and the matter is ripe for review by the Law Court.

The Court holds that the stipulation would bar any action for continuing negligent treatment. I disagree.

[¶ 36] For two distinct reasons, the stipulation does not bar a cause of action for continuing negligent treatment. First, as discussed above, a plaintiff need not prove causation and damages as to each act or omission in the continuum of treat-

ment, but rather must prove these elements as to the continuum of treatment as a whole. Therefore, regardless of whether the stipulation is interpreted to preclude the introduction of evidence on causation as to acts and omissions that occurred within the limitations period, the claim would survive if the Court were to recognize a cause of action for continuing negligent treatment.

[¶ 37] Second, principles of contract interpretation require that the stipulation be interpreted to permit the Dickeys to pursue any claim that is made possible as a result of this appeal. A stipulation is a "voluntary agreement between opposing parties concerning some relevant point; [especially], an agreement relating to a proceeding." Black's Law Dictionary 1455 (8th ed. 2004). Whether a term in a contract is ambiguous is a question of law that this Court reviews de novo. *Madore v. Kennebec Heights Country Club,* 2007 ME 92, ¶ 7, 926 A.2d 1180, 1183. When an agreement is ambiguous, its meaning is a question of fact that the Court reviews for clear error. *Spottiswoode v. Levine,* 1999 ME 79, ¶ 16, 730 A.2d 166, 172. In order to properly interpret a stipulation, the Court assesses whether its language is ambiguous and, if it is, the Court reviews extrinsic evidence to clarify the parties' intent. *See Madore,* 2007 ME 92, ¶ 8, 926 A.2d at 1183–84.

[¶ 38] The stipulation is ambiguous. The first sentence, when considered in isolation, appears to operate as a relinquishment by the Dickeys of proximate cause as to any injury they sustained after February 23, 2003, on any theory of liability. The second sentence of the stipulation, however, refers to and anticipates the appeal that is now before this Court. The appeal has the sole purpose of requesting that this Court adopt a theory of liability that would enable the Dickeys, upon re-

mand, to pursue their cause of action for acts and omissions that started before, but continued after, February 23, 2003. The relinquishment of proximate cause was not intended to apply in a manner that would block a cause of action based on new theories of liability to be addressed in this appeal; if that were so, the entire appeal would be moot. Such a result would be contrary to the intent expressed in the second sentence, which states that the stipulation makes the issues ripe for review. The two sentences that make up the stipulation are at odds with each other, rendering the agreement ambiguous.

[¶ 39] Because the stipulation is ambiguous, it is appropriate to consider other statements of the parties and the procedural context in which it was adopted to aid in its interpretation. *See id.* This includes statements made by the Dickeys as the nonmoving parties in this motion for summary judgment. *See Quintal v. City of Hallowell,* 2008 ME 155, ¶ 2, 956 A.2d 88, 90. The Dickeys stated in their motion for entry of final judgment:

> Although the Court has indicated that evidence of the Respondent's conduct prior to February 23, 2003 is admissible, the Court has also found that the Claimant Patient would be entitled to judgment in her favor if and only if there was a violation of the standard of care and *resulting causation* following February 23, 2003. Because the ability to meet the second standard required for the assertion of a successful malpractice claim requires a showing of proximate cause after that date creating injury, the Claimants would drop their claims unless the continuous treatment doctrine is adopted by the Law Court.

The Dickeys did not either explicitly or inadvertently relinquish any right to assert that proximate cause exists for purposes of pursuing a theory of liability that may

become possible as a result of this appeal. The Dickeys never foreclosed their right to request that this Court consider adopting the continuing negligent treatment doctrine or their right to pursue that cause of action should the Court decide to adopt it.

[¶ 40] The trial court, in granting the Dickeys' motion for final judgment, interpreted the stipulation as follows:

This court finds that by virtue of determining that the statute of limitations bars Claimants from pursuing any claims against Respondent for acts or omissions occurring prior to February 23, 2003, all of the claims set forth in Claimants' Notice of Claim have been resolved in favor of Respondent, as the parties have stipulated that there is no legal basis for [pursuing] claims arising out of acts or omissions that occurred after February 23, 2003. This finding prevents Claimants from pursuing their case before the panel and would also serve as the law of the case if Claimants brought a case in the Superior Court.

The court did not intend its interpretation of the stipulation to render this appeal moot. Rather, it anticipated that this case would be appealed, stating the following in its grant of the motion for final judgment: "Accordingly, the court expressly determines that there is no just reason for delaying the Law Court's review of its order of judgment...." The court understood that the Dickeys, in their motion for entry of final judgment, explicitly made the relinquishment of their claim contingent upon this Court's refusal to adopt the continuous treatment doctrine.

[¶ 41] I would vacate the judgment, adopt the continuing negligent treatment doctrine, and remand this matter for further action consistent with this dissent.