2004 ME 58

**YORK REGISTER OF PROBATE**

v.

**YORK COUNTY PROBATE
COURT et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2004.
Decided: May 4, 2004.

Howard T. Reben, Esq. (orally), Adrienne S. Hansen, Esq., Reben, Benjamin & March, Portland, for plaintiff.

Robert M.A. Nadeau, Esq. (orally), Nadeau & Associates, P.A., Wells, for York County Probate Court.

Gene R. Libby, Esq. (orally), Michael J. Donlan, Esq., Verrill & Dana, LLP, Kennebunk, for York County Commissioners and Treasurer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

**PER CURIAM.**

[¶ 1] This matter is before the Court pursuant to M.R.App. P. 24(c), on report from the Superior Court (York County, *Studstrup, J.*). The Superior Court has reported to us the question of the jurisdiction of the Superior Court (1) over an original complaint brought by the York County Register of Probate, Diana Dennett, against the York County Probate Court, which the Superior Court dismissed, and (2) over proceedings in the nature of contempt, initiated in the York County Probate Court, and removed to the Superior Court, and which the Superior Court ordered remanded to the Probate Court. Dennett also appeals from the Superior Court's dismissal of her complaint. We accept the report of the Superior Court, and conclude that the Superior Court has jurisdiction over the original complaint filed by Dennett. We also conclude that the contempt proceedings brought by York County Judge of Probate Robert Nadeau in the Probate Court against Dennett and York County Treasurer James Atwood were improperly initiated because such proceedings were in regard to the Probate Court's administrative and supervisory functions, as opposed to its judicial function.

## I. BACKGROUND

[¶ 2] In November of 2000, Diana Dennett was elected to a four-year term as York County Register of Probate, and took office in January of 2001. After months of what Probate Judge Nadeau characterized as deficiencies in Dennett's job performance, on November 1, 2001, Nadeau reassigned several of the duties of the Register to the Deputy Register, Carol Lovejoy. Pursuant to 18–A M.R.S.A. § 1–508 (1998),[1] Nadeau certified this reassignment

---

1. Title 18–A M.R.S.A. § 1–508 provides:
   When a register is unable to perform his duties or neglects them, the judge shall

certify such inability or neglect to the county treasurer, the time of its commencement and termination, and what person has per-

in a letter to Treasurer James Atwood. After receiving Nadeau's certification, and pursuant to section 1–508, Atwood began to pay the salary of the Register of Probate, $42,558, to Lovejoy, and to pay the salary of the Deputy Register, $36,828, to Dennett. On November 27, 2002, again purportedly pursuant to section 1–508, Nadeau sent another certification to Atwood that directed him to reduce Dennett's salary by an additional $14,354.60, and to redistribute that portion of Dennett's salary among other Probate Registry employees. Atwood did not act on Nadeau's directive.

[¶ 3] In response to Atwood's failure to act, Nadeau initiated contempt proceedings against Atwood in the Probate Court. *See* M.R. Civ. P. 66. Nadeau appointed a special prosecutor to be paid by the County, to prosecute the contempt proceedings. Atwood entered a limited appearance in the Probate Court, objected to the contempt proceeding and, pursuant to M.R. Prob. P. 71A, filed a notice of removal to the Superior Court.

[¶ 4] On February 18, 2003, Dennett filed a complaint in the Superior Court, alleging that Nadeau acted beyond his authority in restricting her duties and in taking action to reduce her pay, and sought injunctive relief against Nadeau and Atwood.

[¶ 5] Nadeau also initiated contempt proceedings in the Probate Court against Dennett on February 27, 2003; based on her failure to comply with Nadeau's instruction that Dennett not represent the Probate Court or advocate on its behalf at meetings of the York County Commissioners. As did Atwood, pursuant to M.R. Prob. P. 71A, Dennett filed a notice of removal of this contempt proceeding to Superior Court.

[¶ 6] On March 17, 2003, the Superior Court entered a temporary restraining order to preserve the status quo and "to prevent further escalation of hostilities." [2]

[¶ 7] On March 31, 2003, Nadeau filed a separate action in the Superior Court [3] seeking temporary and permanent injunctive relief against Atwood, and later adding the York County Commissioners as defendants. The complaint seeks orders requiring Atwood to comply with the November 27, 2002, certification and directive, a declaration that the Judge of Probate is the "head" of the York County Probate Court, and payment of Nadeau's legal expenses in the enforcement proceedings.[4] All four actions were specially as-

---

formed the duties for the time. Such person shall be paid by the treasurer in proportion to the time that he has served and the amount shall be deducted from the register's salary.

The Judge of Probate also has supervisory powers pursuant to 18–A M.R.S.A. § 1–507 (1998). Section 1–507 states:

Every judge of probate shall constantly inspect the conduct of the register with respect to his records and the duties of his office, and give information in writing of any breach of his bond to the treasurer of his county, who shall bring civil action. The money thus recovered shall be applied toward the expenses of completing the records of such register under the direction of said judge and the surplus, if any, shall inure to the county. If it is not sufficient

for that purpose, the treasurer may recover the deficiency from the register in a civil action.

2. Nadeau appealed requesting relief from the temporary restraining order with this Court. That appeal was dismissed.

3. The Superior Court did not include the suit initiated by Nadeau as part of the Rule 24(c) report. The Superior Court determined that it had jurisdiction over Nadeau's suit because "it involves external relationships between the Judge of Probate and the County Treasurer and County Commissioners."

4. Nadeau's separate plenary action in the Superior Court is not before us on appeal.

signed to a single justice of the Superior Court.

[¶ 8] On June 10, 2003, Nadeau sent Atwood yet another certification and again directed Atwood to withhold $7840 from Dennett's salary and distribute it to the listed Registry employees. Atwood has not complied with the directive.

[¶ 9] Contending that the Superior Court lacks jurisdiction, Nadeau moved to dismiss Dennett's complaint filed in the Superior Court and to have the contempt proceedings against Dennett and Atwood remanded back to the Probate Court. The Superior Court entered a judgment dismissing Dennett's plenary civil action, and on that same date, ordered that the contempt proceedings, that had been removed to the Superior Court, be remanded to the York County Probate Court. The Superior Court then entered an order staying the dismissal and remand orders, and issued an order for report to this Court pursuant to M.R.App. P. 24(c). The Superior Court reported:

> Does the Superior Court have jurisdiction to consider either original complaints or litigation removed from the Probate Court where the litigation concerns actions by a Probate Judge to administer and supervise a Register of Probate including the use of the Judge's contempt powers as applied against the Register and other county officials?

Dennett also filed a separate appeal of the dismissal of her complaint. We consolidated Dennett's appeal with the Superior Court's report.

## II. DISCUSSION

### A. Acceptance of the Report

[¶ 10] The Superior Court noted in its order that "the jurisdictional issue involved is of such importance and doubt" and "concerns fundamental relationships between trial courts, would potentially affect all Superior and Probate Courts, and is an issue of first impression."

[¶ 11] Maine Rule of Appellate Procedure 24(c) governs Superior Court reports of an interlocutory nature:

> If the trial court is of the opinion that a question of law involved in an interlocutory order or ruling made by it ought to be determined by the Law Court before any further proceedings are taken, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

In deciding whether to accept a report from the Superior Court pursuant to M.R. Civ. P. 24(c), we consider whether the question of law reported is "of sufficient importance and doubt to outweigh the policy against piecemeal litigation." *Swanson v. Roman Catholic Bishop of Portland,* 1997 ME 63, ¶ 6, 692 A.2d 441, 443.

[¶ 12] The question involves issues of first impression in Maine that are capable of repetition. *Despres v. Moyer,* 2003 ME 41, ¶ 15, 827 A.2d 61, 65. There are important jurisdictional issues involved in the case; there are also significant issues regarding the nature of contempt proceedings, and whether contempt proceedings can be used to enforce matters that are administrative, as opposed to judicial in nature. The extent of the authority of the Judge of Probate pursuant to 18–A M.R.S.A. § 1–508 is also at issue. The questions reported are sufficiently important and doubtful, and we accept the report.

### B. The Original Action

[¶ 13] Dennett filed suit in the Superior Court against the York County Pro-

bate Court, Nadeau, Atwood, and the York County Commissioners, seeking to prohibit them from restricting her duties and reducing her pay. Contrary to the contentions of Nadeau, the Superior Court is the proper forum to hear this action.

[¶ 14] Title 14 M.R.S.A. § 5301 (2003) confers concurrent jurisdiction "in proceedings in the nature of prohibition and mandamus" on the Supreme Judicial Court and the Superior Court. *Dep't of Corr. v. Superior Court,* 622 A.2d 1131, 1134 (Me. 1993). A writ of prohibition is "[a]n extraordinary writ issued by an appellate court to prevent a lower court from exceeding its jurisdiction or to prevent a nonjudicial officer or entity from exercising a power." BLACK'S LAW DICTIONARY 1228 (7th ed.1999). A writ of mandamus is "[a] writ issued by a superior court to compel a lower court or a government officer to perform mandatory or purely ministerial duties correctly." BLACK'S LAW DICTIONARY 973 (7th ed.1999). No other court, including a Probate Court, can hear Dennett's action. The matters over which the Probate Court has jurisdiction are limited. Title 18–A M.R.S.A. § 1–302(a) (1998) provides:

> To the full extent provided in sections 3–105, 5–102, 5–402, 7–201 and 7–204, the court has jurisdiction over all subject matter relating to (1) estates of decedents, including construction of wills and determination of heirs and successors of decedents and estates of protected persons; (2) protection of minors and incapacitated persons; and (3) trusts.

None of the cited Probate Code sections confer jurisdiction over this type of proceeding to a Probate Court. Although a Probate Court does have equity jurisdiction, that jurisdiction is limited "to the administration of the estates of deceased persons, to wills and to trusts which are created by will or other written instru-

ment." 4 M.R.S.A. § 252 (1989); *Staples v. King,* 433 A.2d 407, 412 (Me.1981) (the initial inquiry in determining whether a Probate Court has subject-matter jurisdiction of an action is whether the case relates to an estate, a will, or a trust).

[¶ 15] Although the Supreme Judicial Court has concurrent original jurisdiction over this matter with the Superior Court, *see Opinion of the Justices,* 147 Me. 25, 30, 83 A.2d 213, 215 (1951); 4 M.R.S.A. § 57 (Supp.2003) (stating that when the Maine Supreme Judicial Court sits as a court of law it may hear "all questions arising in cases in which equitable relief is sought"), it is more appropriate for the Superior Court to act as the trial court in this instance. The two primary roles of the Supreme Judicial Court are as a supervisory court and an appellate court. 4 M.R.S.A. § 1 (1989) ("The Supreme Judicial Court shall have general administrative and supervisory authority over the Judicial Department."); 4 M.R.S.A. § 7 (1989) (stating that the Court "has general superintendence of all inferior courts for the prevention and correction of errors and abuses where the law does not expressly provide a remedy"); 4 M.R.S.A. § 57 (Supp.2003) (stating that cases on appeal from the District Court, the Superior Court, a single justice of the Supreme Judicial Court, or from one of the Probate Courts may be appealed to the Law Court). The Superior Court, which has jurisdiction, is the most appropriate court to hear Dennett's original action, which seeks what is in the nature of writs of prohibition and mandamus.

### C. The Two Contempt Actions

[¶ 16] Nadeau contends that Dennett and Atwood improperly removed from the York County Probate Court the contempt actions initiated against them. He argues that "contempt proceedings are

unique to the Court in which they originate ... and cannot therefore be said to be within the concurrent jurisdiction of a non-originating Superior Court." Nadeau also contends that a Probate Court is entitled to enforce any orders, judgments, and decrees it makes and removal of the contempt actions to the Superior Court was improper.

[¶ 17] The two contempt proceedings initiated by Nadeau do not arise out of court proceedings being litigated in the York County Probate Court. Rather, they originate from matters that are administrative in nature, disputes that began with differences as to the operation of the York County Probate Court, and how that court is administered and its employees supervised and compensated. Contempt proceedings are not properly used by a judge to put into effect administrative policies of court operations. *Cf. Gendron v. Burnham*, 146 Me. 387, 399, 82 A.2d 773, 781 (1951) (stating that contempt proceedings are to punish conduct that "interferes with or has a tendency to obstruct *the administration of justice in the courts*") (emphasis added) (quoting *Commonwealth v. McNary*, 246 Mass. 46, 140 N.E. 255, 256 (1923)).

[¶ 18] The clear distinction between actions taken by a judge acting in a judicial capacity, and actions that are administrative in nature, has been noted by the United States Supreme Court. *See Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). A judge's actions "in supervising court employees and overseeing the efficient operation of a court," though important, are not judicial actions. *Id.* at 229, 108 S.Ct. 538. The same holds true in the present case; decisions by a Judge of Probate about how a Probate Court should be administered and how court employees should be supervised and utilized are not purely judicial in nature, and do not arise from litigation before the Probate Court. Initiating contempt proceedings to enforce such administrative or personnel decisions is an improper use of the contempt power.

[¶ 19] Furthermore, there is no statutory authority for a Judge of Probate or a Probate Court to directly reduce or redistribute the salary of a register of probate. The statute grants that authority only to the County Treasurer. Title 18–A M.R.S.A. § 1–508 provides that "[w]hen a register is unable to perform his duties or neglects them, the judge shall certify such inability or neglect *to the county treasurer*." (Emphasis added.) The Superior Court has the jurisdiction to consider the powers of the Judge of Probate, the Treasurer, and the County Commissioners pursuant to section 1–508, and whether, and to what extent, the statute *requires* that the Treasurer act on the certification of the Judge of Probate. 14 M.R.S.A. § 5301.

[¶ 20] Actions seeking to require the Treasurer or the County Commissioners to perform statutory duties are in the nature of mandamus, and such relief must be sought by plenary action brought in the Superior Court. Mandamus proceedings against either Dennett or Atwood cannot be initiated in the York County Probate Court. Because the contempt proceedings were improperly initiated, York County is not required to pay the legal expenses that may have been incurred as a result of the actions.

The entry is:

Report accepted. Dennett's original action is remanded to the Superior Court for further proceedings consistent with this opinion. The two contempt actions are remanded to the Superior Court for remand to the Probate Court for dismissal.