2011 ME 91

**Philip L. BAKER**

**v.**

**Merrill FARRAND Jr. et al.**

Supreme Judicial Court of Maine.

Argued: April 13, 2011.
Decided: Aug. 18, 2011.

Julian L. Sweet, Esq. (orally), Craig A. Bramley, Esq., Berman & Simmons, P.A., Lewiston, ME, for Philip Baker.

Mark G. Lavoie, Esq., Christopher C. Taintor, Esq. (orally), Norman, Hanson &

DeTroy, LLC, Portland, ME, for Merrill Farrand, Jr., and The Medical Group.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] The question presented on report is whether we will recognize the continuing negligent treatment doctrine, which allows a patient to assert a cause of action for professional negligence based upon two or more related negligent acts or omissions by a health care provider or practitioner if some, but not all, of the acts or omissions occurred outside of the three-year statute of limitations period established by the Maine Health Security Act, 24 M.R.S. § 2902 (2010). The Superior Court (York County, *Brennan, J.*) declined to recognize the doctrine and accordingly granted a partial summary judgment in favor of Merrill Farrand Jr., D.O., and The Medical Group as to the portion of Philip L. Baker's claim of negligent medical treatment that arose more than three years prior to Baker's notice of claim. We accept the report of this case, explain that the language of the Health Security Act authorizes claims of continuing negligent treatment, and vacate the partial summary judgment.

## I. BACKGROUND

[¶ 2] The following facts, viewed in the light most favorable to Baker as the non-moving party, are established in the summary judgment record. *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 5, 8 A.3d 677, 679.

[¶ 3] Dr. Farrand served as Baker's primary care physician from 1987 through 2006. From 1996 through 2006, Farrand tested Baker's prostate-specific antigen (PSA) levels as part of Baker's annual physical exams. PSA tests may reveal evidence of prostate diseases, such as prostate cancer, prostate hypertrophy, and prostatitis. A normal PSA test result is in the 0–4 range; results above that range may indicate prostate disease. Baker's PSA test results were 3.8 in 2001, 5.7 in 2002, 5.2 in 2003, 5.86 in 2004, 5.7 in 2005, and 7.7 in 2006. Baker's 2004 physical exam, at which Farrand drew blood for the PSA test, was conducted on September 22, 2004. After receiving Baker's PSA test results in October 2006, Farrand referred Baker to a urologist. The urologist diagnosed Baker with adenocarcinoma of the prostate after performing a prostate biopsy.

[¶ 4] On September 14, 2007, Baker filed a notice of claim in accordance with the Health Security Act, *see* 24 M.R.S. § 2853(1)(B) (2010); M.R. Civ. P. 80M(b)(1), alleging that Farrand violated the applicable standard of care by failing to refer him to a urologist in 2003,[1] 2004, and 2005, and that this failure delayed his diagnosis until after his cancer had spread and his treatment options were thereby limited. The court appointed a chair of a prelitigation screening panel, *see* 24 M.R.S. § 2852(2)(A) (2010), who subsequently ordered the parties to resolve Farrand's statute of limitations affirmative defense by motion with the court. *See* M.R. Civ. P. 80M(e).

[¶ 5] In August 2009, Farrand moved for a partial summary judgment on Baker's claims arising from any negligent acts or omissions that occurred before September 14, 2004, based on the three-year stat-

---

1. According to Baker's notice of claim, he "was not sure what [his] PSA was in 2002." However, Baker's reply statement of material facts and a stipulation by the parties make it clear that he alleges negligent treatment as early as 2002.

ute of limitations, 24 M.R.S. § 2902. The Superior Court granted Farrand's motion, concluding that Baker could not bring a claim for any acts occurring more than three years before he filed his notice. The court reasoned that "[t]he Legislature's unambiguous use [in section 2902] of the words 'act' and 'omission' in the singular indicate that each individual act must be considered in its own right." With this construction, the court declined to recognize the continuing negligent treatment doctrine pursuant to which the limitations period would begin to run for "a series of interrelated negligent acts that occurred during the course of treatment" on the date of the last act of negligence, "as long as that act occurred within three years before the legal action was initiated." *Dickey v. Vermette*, 2008 ME 179, ¶ 9, 960 A.2d 1178, 1180; *id.* ¶ 32, 960 A.2d at 1185 (Silver, J., dissenting).

[¶ 6] Pursuant to M.R.App. P. 24(a), the parties subsequently filed an agreed-upon motion to report the case to us to review the court's partial summary judgment and, more specifically, to resolve "whether, on the facts presented, the con-

tinuing negligent treatment doctrine allows Mr. Baker to pursue an 'action for professional negligence,' predicated on acts and omissions that occurred more than three years before he brought suit." The parties stipulated that, at trial, an expert would testify that Baker suffered damage from negligent acts that occurred within the limitations period and that the damage is "either indeterminate or negligible."[2] The parties further stipulated that Baker would dismiss his action with prejudice unless this Court vacates the court's entry of partial summary judgment. The court granted the motion and reported this matter to us.

## II. DISCUSSION

### A. The Report Pursuant to M.R.App. P. 24(a)

[¶ 7] Upon report of a case pursuant to M.R.App. P. 24(a), we independently determine whether, as an exception to the final judgment rule, acceptance of the report "would be consistent with our basic function as an appellate court, or would improperly place us in the role of an

2. With their agreed-upon motion to report the case, the parties filed a stipulation setting forth the following:

    1. Claimant Philip Baker filed the Notice of Claim in this case on September 14, 2007, alleging acts of negligence beginning in 2002 and continuing into November, 2006.

    2. Claimant alleges that Respondent Merrill Farrand, Jr., D.O., failed to respond appropriately to abnormal prostate specific antigen test results.

    3. If this case were to proceed to trial, Mr. Baker would offer expert witness testimony that despite annual checkups from 2002 through 2006 revealing elevated PSA scores, Dr. Farrand was negligent in failing to refer him to a urologist (and/or in failing to advise him that he should get an additional workup) until November 2006.

    4. If this case were to proceed to trial, Mr. Baker would offer expert testimony that

he suffered damage as a result of Dr. Farrand's conduct from 2002 through November 2006.

    5. If this case were to proceed to trial, Mr. Baker would offer expert witness testimony that he suffered damage as a result of the negligent acts that occurred within the three years preceding the filing of the Notice of Claim.

    6. The parties stipulate that the damage caused by acts of negligence within the three years preceding the Notice of Claim is either indeterminate or negligible.

    7. The parties stipulate that Mr. Baker will dismiss this action with prejudice unless the Maine Supreme Court vacates the Order of the Superior Court (Brennan, J.) granting Respondents' Motion for Partial Summary Judgment, dated February 25, 2010.

advisory board." *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 6, 957 A.2d 94, 98 (quotation marks omitted). We consider whether (1) "the question reported is of sufficient importance and doubt to outweigh the policy against piecemeal litigation"; (2) the question "might not have to be decided at all because of other possible dispositions"; and (3) "a decision on the issue would, in at least one alternative, dispose of the action." *Id.* ¶¶ 7–9, 957 A.2d at 98 (quotation marks omitted); M.R.App. P. 24(a).

[¶ 8] The question presented is whether a cause of action for professional negligence under the Health Security Act exists for acts or omissions committed during a continuing course of negligent treatment when some of the acts or omissions occurred outside the limitations period.

### 1. The Importance of the Reported Question

[¶ 9] As to the first criterion of Rule 24(a), this question of law is a novel one that we expressly left open in *Dickey*, 2008 ME 179, ¶ 9, 960 A.2d at 1180, and it is capable of frequent repetition. Because its resolution will affect patients' ability to bring legal claims and health care providers' and practitioners' exposure to liability, we conclude that the question is sufficiently important for it to be addressed on report. *See Liberty Ins. Underwriters*, 2008 ME 149, ¶ 11, 957 A.2d at 98–99; *York Register of Probate v. York Cnty. Probate Court*, 2004 ME 58, ¶ 12, 847 A.2d 395, 398.

### 2. Other Possible Dispositions

[¶ 10] The second criterion asks whether another possible disposition would render the reported question moot. Because the question on report addresses a threshold matter related to the application of a statute of limitations, other possible dispositions are limited. However, if the parties' stipulation precludes a finding that a claim for negligence arose within the limitations period, then the statute of limitations would clearly apply and resolution of the reported question would be unnecessary. *See Dickey*, 2008 ME 179, ¶ 9 n. 2, 960 A.2d at 1180–81.

[¶ 11] The essential elements of a claim for negligence are duty, breach, proximate causation, and harm. *Id.* The elements of duty, breach, and proximate causation are alleged by the parties' stipulations that between 2002 and 2006, Dr. Farrand "failed to respond appropriately to abnormal [PSA] test results," and at trial, "Baker would offer expert witness testimony that he suffered damage as a result of the negligent acts that occurred within [the limitations period]." Although the stipulation describes the alleged damage caused by the acts or omissions occurring within the limitations period as "either indeterminate or negligible," the stipulation nevertheless asserts actual loss or harm for which Baker may prove damages, some or all of which may be negligible.[3] *See Cunningham v. Huffman*, 154 Ill.2d 398, 182 Ill.Dec. 18, 609 N.E.2d 321, 325 (1993) (adopting the continuous negligent treatment doctrine and recognizing

---

3. We note the distinction between negligible damages and nominal damages. Negligible damages are simply a small sum of money awarded as compensation. Nominal damages are recoverable for a violation of a plaintiff's legal right—that is, an "injury"—when that injury is not accompanied by actual loss or harm, or when the extent of the loss or harm is not proven. 1 Jerome H. Nates et al., *Damages in Tort Actions* §§ 2.00, 2.01 at 2–2 (2005); *see, e.g., Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980, 982 (discussing how nominal damages are available for common law trespass, for which actual damages need not be proved).

that the doctrine applies even where the damages arising within the limitations period are negligible); *Dickey,* 2008 ME 179, ¶ 34, 960 A.2d at 1186 (Silver, J., dissenting) (discussing *Cunningham* ).

[¶ 12] The stipulation does not preclude a finding that a negligent act or omission occurred within the limitations period. Accordingly, the application of the statute of limitations in this case turns on how we answer the question on report, and there are no other possible dispositions that would render the question moot.

### 3. Disposition of the Action

[¶ 13] The parties also stipulated that Baker will dismiss this action with prejudice unless we vacate the partial summary judgment. Therefore, a decision that affirms the court's judgment would dispose of this action.

[¶ 14] Because all three criteria required by Rule 24(a) are satisfied, we accept the report of this case. *See Liberty Ins. Underwriters,* 2008 ME 149, ¶¶ 7-9, 957 A.2d at 98.

### B. Continuing Negligent Treatment

[¶ 15] In his appellate brief, Baker frames the issue presented as follows:

> Whether the Law Court should recognize that 1) where there has been continuing negligent treatment for, or related to, the same condition; and 2) where, given the progressive and initially asymptomatic nature of the injury, the time at which injury resulted from one of the acts of negligence in the course of treatment cannot be determined precisely; but 3) at least one act of negligence giving rise to some portion of the injury falls within the three year statute of

limitations for medical malpractice, 24 M.R.S. § 2902, then the claimant has stated "a cause of action" for continuing negligent treatment under that statute which accrued on the last date causal negligence occurred and for which the claimant may recover damages for his entire injury.

Baker contends that recognizing a substantially uninterrupted, continuous course of improper treatment as a single cause of action comports with "the reality that medical monitoring and treatment for a specific condition can and does take place over a continuum of time and observation." He encourages us to recognize that there is no evidence that the Legislature intended to preclude such a cause of action when it adopted section 2902 in 1986. *See* L.D. 2400, Statement of Fact (112th Legis.1986); P.L.1985, ch. 804, § 13 (effective Aug. 1, 1988).

[¶ 16] Farrand responds that adoption of the continuing negligent treatment doctrine would be contrary to the Health Security Act's purpose of reducing medical malpractice insurance costs and of providing medical professionals a measure of certainty related to their exposure to liability. He argues that because the language of section 2902 unambiguously specifies that "a cause of action accrues on the date of the act or omission giving rise to the injury," instead of on the date of an injury or discovery of an injury, it functions as a statute of repose[4] that bars claims related to any acts or omissions that occurred more than three years prior to the patient's notice of claim. Farrand acknowledges that the strict application of section 2902 as a statute of repose will produce

---

4. A statute of repose is a "statute barring any suit that is brought after a specified time since the defendant acted ..., even if this period ends before the plaintiff has suffered a resulting injury." Black's Law Dictionary 1546 (9th ed.2009); *see also Choroszy v. Tso,* 647 A.2d 803, 807 (Me.1994) (discussing the constitutionality of statutes of repose).

harsh results for some injured patients, but reminds us that this is an unavoidable consequence that was contemplated by the Legislature when it enacted section 2902. *See Dasha v. Me. Med. Ctr.*, 665 A.2d 993, 996 (Me.1995).

[¶ 17] To answer the question on report, we address (1) why we declined to adopt the continuing course of treatment doctrine in *Dickey v. Vermette;* (2) how the Health Security Act's definition of an action for professional negligence provides redress for an injury arising from more than one act or omission committed by a health care provider or practitioner; and (3) whether, on motion for partial summary judgment, Farrand has established that Baker's claims for negligence arising outside of the three-year limitations period are time-barred.

### 1. *Dickey v. Vermette*

[¶ 18] In 2008, we decided a factually similar case without resolving whether to adopt the continuing negligent treatment doctrine. *See Dickey*, 2008 ME 179, 960 A.2d 1178. In *Dickey*, a dental hygienist noticed a spot on a female patient's dental x-ray in 2000. *Id.* ¶ 2, 960 A.2d at 1179. A dentist viewed the x-ray at the patient's subsequent routine visits, which occurred every three to five months over the next five years. *Id.* In 2005, a second x-ray showed that the spot had grown, and the dentist referred the patient to an oral surgeon, who diagnosed her with oral cancer. *Id.* In 2006, the patient filed a notice of claim for professional negligence. *Id.* ¶ 3, 960 A.2d at 1179. On partial summary judgment, the court ruled that her claims arising from acts or omissions occurring more than three years prior to her notice of claim were time-barred pursuant to section 2902. *Id.* ¶ 4, 960 A.2d at 1179. Instead of pursuing claims that were not time-barred, the patient appealed to us

with the stipulation that no act or omission occurring within three years of her notice of claim was a proximate cause of her injury. *Id.* ¶ 4, 960 A.2d at 1179–80.

[¶ 19] We determined that the continuing course of treatment doctrine, pursuant to which the limitations period does not begin to run until the end of the doctor-patient relationship, could not be applied to toll the statute of limitations because, by explicitly defining when a cause of action accrues in section 2902, the Legislature had foreclosed our ability to create an exception to that definition. *Id.* ¶ 7, 960 A.2d at 1180.

[¶ 20] We also addressed the continuing negligent treatment doctrine, pursuant to which the limitations period of section 2902 would not begin to run until the date of the last act of negligence. *Id.* ¶ 9, 960 A.2d at 1180. Because every claim for negligence requires proof of duty, breach, proximate causation, and harm, we concluded that the parties' stipulation—that no act occurring within the limitations period proximately caused her harm—precluded the patient from proving that the last act of negligence occurred within the limitations period. *Id.* ¶ 9 & n. 2, 960 A.2d at 1180–81. As a result, we declined to consider adoption of the continuing negligent treatment doctrine, and we affirmed the summary judgment in favor of the dentist based on the limitations period of section 2902. *Id.* ¶ 9, 960 A.2d at 1180. *But see id.* ¶¶ 25–34, 960 A.2d at 1184–86 (Silver, J., dissenting) (discussing the continuing negligent treatment doctrine in detail).

### 2. Action for Professional Negligence

[¶ 21] We review the court's interpretation of section 2902 de novo by first examining the plain meaning of the statute within the context of the whole statutory scheme to give effect to the Legislature's

intent.[5] *HL 1, LLC v. Riverwalk, LLC,* 2011 ME 29, ¶ 17, 15 A.3d 725, 731; *Dickey,* 2008 ME 179, ¶ 5, 960 A.2d at 1180.

[¶ 22] In relevant part, section 2902 of the Health Security Act provides:

> Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury.... This section does not apply where the cause of action is based upon the leaving of a foreign object in the body, in which case the cause of action shall accrue when the plaintiff discovers or reasonably should have discovered the harm.

24 M.R.S. § 2902. Although section 2902 directs that, "a cause of action accrues on the date of the act or omission giving rise to the injury," it does not define "act or omission." Elsewhere in the statutory scheme, however, the Act defines "action for professional negligence" and "professional negligence," and those terms offer insight into the plain meaning of "act or omission." Section 2502(6) defines an "action for professional negligence" as:

> any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services.

24 M.R.S. § 2502(6) (2010). Section 2502(7) defines "professional negligence" as meaning:

> A. There is a reasonable medical or professional probability that the acts or omissions complained of constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care; and
>
> B. There is a reasonable medical or professional probability that the acts or omissions complained of proximately caused the injury complained of.

24 M.R.S. § 2502(7) (2010).

[¶ 23] The Act's definition of "professional negligence" accounts for each of the four elements in every claim of negligence—duty, breach, proximate causation, and harm. *See* 24 M.R.S. § 2502(7); *Dickey,* 2008 ME 179, ¶ 9 n. 2, 960 A.2d at 1180. This definition recognizes that a cause of action for professional negligence is stated when either a single act or omission or two or more "acts or omissions complained of constitute a deviation from the applicable standard of care ... and ... [t]here is a reasonable medical or professional probability that the acts or omissions ... proximately caused the injury complained of." 24 M.R.S. § 2502(7).

[¶ 24] Accordingly, a single cause of action may arise from multiple acts or omissions even if each independent act or omission, viewed in isolation from the other acts or omissions, constitutes an independent deviation from the applicable

---

5. Through statutory enactment, the Legislature has foreclosed our capacity to define when the statute of limitations of section 2902 may be tolled, *see* 14 M.R.S. §§ 853, 859 (2010), or to establish instances where the discovery rule may be applied, *see* 24 M.R.S. § 2902 (2010). *Dasha v. Me. Med. Ctr.,* 665 A.2d 993, 996 (Me.1995); *Choroszy,* 647 A.2d at 806–07, 808. However, resolution of the question on report does not involve tolling a statute of limitations or extending application of the discovery rule. *Dickey v. Vermette,* 2008 ME 179, ¶ 28, 960 A.2d 1178, 1184–85 (Silver, J., dissenting). In the absence of a relevant "positive and definitive statutory pronouncement" by the Legislature, it is appropriate for us to consider the proposed interpretation of section 2902. *See Myrick v. James,* 444 A.2d 987, 992–93 (Me.1982).

standard of care. In such cases, the key question is whether, in combination, "the acts or omissions complained of *proximately caused the injury complained of.*" *Id.* (emphasis added). If so, the single cause of action must accrue from the date of the last act or omission that contributed to the alleged injury because only then was the alleged negligence complete. By contrast, if it were reasonably probable that one act or omission in a series of acts or omissions was the *sole* proximate cause of the injury complained of, a cause of action would accrue from the date of that act or omission, and not from the dates of any subsequent acts or omissions.

[¶ 25] Thus, in cases involving a continuing course of negligent treatment, the Act allows for the possibility that two or more negligent acts or omissions might combine to proximately cause a patient's injury. *See* 24 M.R.S. § 2502(7). In such cases, the cause of action "accrues" for purposes of the three-year limitations period on the date of the last act or omission by the health care provider or practitioner that contributed to the proximate causation of the patient's harm. There is no sound reason to require a plaintiff to split his or her claims and assert a separate cause of action for each individual negligent act or omission when the acts or omissions combine to proximately cause a discrete harm. "Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings demand that a plaintiff present all relevant aspects of his cause of action in a single lawsuit." *Camps Newfound/Owatonna Corp. v. Town of Harrison,* 1998 ME 20, ¶ 12, 705 A.2d 1109, 1113–14 (quotation marks omitted). This view is in harmony with the plain meaning of section 2902 when it is read in conjunction with section 2502(6) and (7).

[¶ 26] In contrast, when section 2902 is read in isolation from section 2502(6) and (7), the term "act or omission" naturally refers to a single, specific occurrence. This literal construction, adopted by the Superior Court and urged by Farrand, supports a conclusion that the plain meaning of "act or omission," as used in section 2902, does not mean the last in a series of acts or omissions. So read, a cause of action "accrues" for purposes of section 2902 upon the occurrence of each negligent act or occurrence that proximately caused an injury.

[¶ 27] To determine a statute's meaning, however, our reading of the statute must be squared with all applicable rules of statutory construction. Here, we must account for the rule: "Words of the singular number may include the plural; and words of the plural number may include the singular." 1 M.R.S. § 71(9) (2010). We apply this rule unless the resulting "construction is inconsistent with the plain meaning of the enactment." 1 M.R.S. § 71 (2010); *Adoption of M.A.,* 2007 ME 123, ¶ 12, 930 A.2d 1088, 1092.

[¶ 28] There is a circular quality to the logic of using a rule of statutory construction to interpret the plain meaning of a statute when that rule only applies if it does not conflict with the plain meaning of the statute. But the application works here because there are no other words or phrases in section 2902 suggesting that "act or omission" should be read to express only the singular. It is not inconsistent with the plain meaning of the words employed in section 2902, or the Health Security Act as a whole, to treat a cause of action for professional negligence as accruing on the most recent date of the act(s) or omission(s) giving rise to the harm because elsewhere the Act defines "professional negligence" using the plural "acts or omissions." 24 M.R.S. § 2502(7). Thus, it is

consistent with the Act's definition of a cause of action for professional negligence to define the term "act or omission" as used in section 2902 as referring to either a single act or omission, or a series of related acts or omissions that proximately cause a harm.

[¶ 29] We therefore hold that, pursuant to section 2902, a plaintiff may bring a single action alleging continuing negligent treatment that arises from two or more related acts or omissions by a single health care provider or practitioner where each act or omission deviated from the applicable standard of care and, to at least some demonstrable degree, proximately caused the harm complained of, as long as at least one of the alleged negligent acts or omissions occurred within three years of the notice of claim. This construction is consonant with the plain meaning of section 2902, the Legislature's definitions of "action for professional negligence" and "professional negligence" in sections 2502(6) and 2502(7), and the legislatively adopted rule of construction provided in 1 M.R.S. § 71(9).

[¶ 30] The question on report asks whether we will recognize the continuing negligent treatment doctrine and allow Baker to assert a claim based on acts or omissions that occurred more than three years prior to the filing of his notice of claim. Subject to the requirements for a claim involving continuing negligent treatment as we have discussed, we answer this question in the affirmative based on the language and authority of the Health Security Act and not the common law.

3. The Timeliness of the Notice of Claim in this Case

[¶ 31] We next apply our construction of section 2902 to a de novo review of the court's grant of a partial summary judgment. *Cach, LLC v. Kulas,*

2011 ME 70, ¶ 8, 21 A.3d 1015, 1018. On a defendant's motion for summary judgment, the defendant asserting the affirmative defense of a statute of limitations has the ultimate burden of establishing without dispute as to a material fact that the cause of action accrued outside of the limitations period. *See id.* ¶ 9, 21 A.3d at 1018–19; *McLaughlin v. Superintending Sch. Comm. of Lincolnville,* 2003 ME 114, ¶ 24, 832 A.2d 782, 789; *Ne. Harbor Golf Club, Inc. v. Harris,* 1999 ME 38, ¶ 15, 725 A.2d 1018, 1023; M.R. Civ. P. 56(e).

[¶ 32] On his motion for partial summary judgment, Farrand sought judgment only as to acts or omissions occurring outside of the limitations period. To prevail on his motion pursuant to our construction of section 2902, he must establish without dispute as to a material fact that no acts or omissions occurring before September 14, 2004, contributed to the proximate cause of the harm that Baker alleges arises from more recent acts or omissions.

[¶ 33] The summary judgment record establishes that Baker's notice of claim was filed on September 14, 2007. Baker asserts that Farrand's failure to refer him to a urologist as early as September 2002 was negligent. Baker also asserts that Farrand should have made the appropriate referral in 2003, 2004, and 2005, and that because the referral was not made until 2006, he was harmed. Specifically, Baker's asserted harm is the adverse effect on his prognosis and treatment options that resulted from the delayed diagnosis of his prostate cancer. On this record, Farrand has not established without dispute as to a material fact that his failure to refer Baker to a urologist in 2002 or 2003 was not in part a proximate cause of the delayed diagnosis of Baker's prostate cancer, affecting his prognosis and treatment options.

[¶ 34]   Accordingly, we vacate the partial summary judgment.  On remand, to recover for any acts or omissions that occurred more than three years prior to the filing of his notice of claim, Baker will have to establish that each of those acts or omissions deviated from the applicable standard of care and, in combination with an act or omission that occurred within the limitations period, contributed to and was a proximate cause of his harm.

The entry is:

Report accepted.  Partial summary judgment vacated.  Remanded for further proceedings consistent with this opinion.