STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-13-035

CYNTHIA DOUGLASS, Individually, and KIRK DOUGLASS as Personal Representative of the Estate of Arthur Douglass, Jr.,

Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORP., et al.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Defendants, Imo Industries, Inc. ("Imo"), Foster Wheeler, LLC ("Foster Wheeler"), and Warren Pumps, LLC ("Warren"), move this Court to grant summary judgment on all claims asserted in the Plaintiffs' Complaint. Plaintiffs, Cynthia Douglass (individually) and Kirk Douglass, as the personal representative of the Estate of Arthur Douglass ("Decedent") (collectively "Plaintiffs"), allege that the Decedent's illness resulted from exposure to asbestos dust and fibers present in work areas at Bath Iron Works ("BIW"). Count I of Plaintiff's Complaint alleges negligence, Count II alleges a violation of 14 M.R.S. § 221 (2014), and Count III is a loss of consortium claim.

1

## II.  MATERIAL FACTS

Arthur Douglass, Jr.[1] ("Mr. Douglass" or "Decedent") worked at BIW from June 16, 1958, until the 1990s as a stagebuilder.[2] During Mr. Douglass' tenure at BIW, asbestos was used in the construction of naval war ships. Because they were steam-powered, the propulsion machinery generated high heat. Asbestos insulation was used to insulate the pipes in high-temperature spaces to keep the sailors safe and to control the ambient temperature in those spaces. (Pls.' Addt'l S.M.F. ¶ 80; Defs.' Opp. S.M.F. ¶80.) Stage building involved putting staging up so that the personnel could access various areas that they had to fix or install. (Defs.' Supp. S.M.F. ¶ 1; Pls.' Opp. S.M.F. ¶ 1.) Stage building would have taken place all over the shipyard, including on ships being built or renovated.[3] *Id.*

Mr. Douglass began to experience symptoms of mesothelioma in early 2012 and in April of 2012 he was diagnosed with mesothelioma. (Defs.' Supp S.M.F. ¶ 1; Pls.' Opp. S.M.F. ¶ 1.) Mr. Douglass believed that he was exposed to asbestos during his tenure as a stagebuilder while removing staging. He believed that the process of tipping the planks over exposed dust and metal shards left by chippers and other workers. (Defs.' Supp S.M.F. ¶ 9; Pls.' Opp. S.M.F. ¶ 9.) Mr. Douglass testified that he spent time in the machinery areas on board ships and worked in proximity to others who were

---

[1] Mr. Douglass was not deposed in this matter, but his testimony, under oath and on the record, is available from his Longshoreman's disability hearing. (Defs.' Supp S.M.F. ¶ 7; Pl.s' Opp. S.M.F. ¶ 7.)

[2] He was briefly laid off in 1961, but hired back by BIW at a satellite facility in West Brunswick, Maine. By 1962 he was back at the main facility in Bath, Maine as a stagebuilder. (Defs.' Supp S.M.F. ¶ 2; Pls.' Opp. S.M.F. ¶ 2.)

[3] William Lowell testified that as a stagebuilder the Decedent would have worked on the construction of new ships and the remodeling or "conversions" of older ships. (Pls.' Addt'l S.M.F. ¶ 50.)

responsible for installing or removing asbestos insulation from the equipment. (Pls.' Opp. S.M.F. ¶ 9.)

Defendant, Imo is a successor of DeLaval. At the time Mr. Douglass was employed with BIW, DeLaval manufactured pumps, auxillary turbines, turbine generators, and propulsion turbines. Much of this equipment would have been externally covered with asbestos. (Pls.' Addt'l S.M.F. ¶ 52.) Defendant Warren manufactured pumps, including bilge and fuel oil pumps. These pumps would have been externally covered with asbestos and would have included asbestos gaskets and packing. (Pls.' Addt'l S.M.F. ¶ 53.) In the 1950's and 1960's, all of Warren's equipment included asbestos gaskets and packing. (Pls.' Addt'l S.M.F. ¶ 56.) Defendant Foster Wheeler manufactured boilers. Foster Wheeler's boilers would have contained external asbestos insulation.

Dwight Dwinal, one of Mr. Douglass' coworkers, knew Mr. Douglass but could not provide specifics about where or on what ships Mr. Douglass worked. (Defs.' Supp. S.M.F. ¶ 16; Pls.' Opp. S.M.F. ¶ 16.) Further, Mr. Dwinal could not identify any equipment that Mr. Douglass might have been exposed to at BIW. (Defs.' Supp. S.M.F. ¶ 18; Pls.' Opp. S.M.F. ¶ 18.)

Larry Albee, another one of Mr. Douglass' coworkers, recalled working on new construction of guided missile ships at BIW. He testified that on these assignments stage builders worked in machinery spaces inside the ships before all of the equipment would have been in place. (Defs.' Supp. S.M.F. ¶ 21; Pls.' Opp. S.M.F. ¶ 21.) Louis Murphy knew Mr. Douglass and worked with him on occasion. Mr. Murphy believed that the sources of asbestos exposure at BIW was asbestos on intakes and uptakes on some of the

3

conversions as well as asbestos in the pipes in the BIW buildings, gaskets for the valves, and other equipment. Mr. Murphy was unaware as to whether Mr. Douglass worked on conversions.[4] (Defs.' Supp. S.M.F. ¶ 29; Pls.' Opp. S.M.F. ¶ 29.)

Captain William Lowell, a former Chief Operating Engineer at BIW, indicated that the majority of asbestos exposure at BIW was from thermal insulation. (Defs.' Supp S.M.F. ¶ 33; Pls.' Opp. S.M.F. ¶ 33.) Mr. Lowell remembered Mr. Douglass specifically working aboard two vessels, the Yarnell[5] and the Gridley. (Defs.'Supp. S.M.F. ¶ 34; Pls.' Opp. S.M.F. ¶ 34.) **KADY, PLS ADD CITATIONS TO LOWELL AFFID WHERE HE SAYS THAT HE SAW HIM IN MACHINERY SPACES AND ALSO FROM HIS DEPO WHERE HE SAYS HE SAW HIM DOING WORK ON THE DLG I THINK IT IS PAGE 15 OF DEPO.** Mr. Lowell regularly reviewed records of equipment listed on each ship constructed at BIW during Mr. Douglass' tenure at BIW. (Pls.' Addt'l S.M.F. ¶ 67.) He testified that the Defendants had asbestos-containing products on the Yarnell and the Gridley. The Defendants asbestos-containing products were also on other ships during Mr. Douglass' tenure at BIW. (Pls.' Addt'l ¶¶ 69-72.) However, Mr. Lowell could not recall what work Mr. Douglass was doing on those ships or what period of time he worked on each ship. *Id.* Lowell had no other specific recollection of seeing Mr. Douglass around insulation. *Id.*

Mr. Douglass passed away in July 2012. (Defs.'Supp. S.M.F. ¶ 5.) Dr. Michael Jones, the Chief of Pathology Department at the Maine Medical Center, concluded that

---

[4] Conversions are ships that BIW updated and overhauled. While working on conversions, asbestos was removed from the equipment and then reinstalled after overhauling the equipment. (Pls.' Addt'l S.M.F. ¶ 50.)

[5] The Yarnell was built at BIW and delivered to the Navy on January 25, 1963. (Pls.' Addt'l S.M.F. ¶ 83.)

4

Mr. Douglass's death was caused by mesothelioma as the result of exposure to asbestos. (Pls.' Addt'l S.M.F. ¶ 43.)

### III. STANDARD OF REVIEW

#### A. Summary Judgment

To survive a motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). Any findings for the plaintiff may not be based upon conjecture or speculation. *Id.* A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a factfinder to choose between competing versions of the fact. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. The Court views the evidence in the light most favorable to the non-moving party. *Webb v. Haas*, 1999 ME 74, ¶ 18, 728 A.2d 1261.

Rule 56 requires parties "to come forward with affidavits or other materials setting forth by competent proof specific facts that would be admissible in evidence to show . . . that a genuine issue of fact exists." *Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535-36 (Me. 1992). "When there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate in order to return a verdict for the plaintiff, a defendant is entitled to summary judgment. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 14, 796 A.2d 683. However, no matter how improbable a

5

party opposing summary judgment's chances of prevailing at trial seem, a court may not decide an issue of fact; it is only permitted "to determine whether a genuine question of fact exists." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206.

B. Applicable Law

Plaintiffs' primary causes of action against the Defendants are negligence and strict liability. Plaintiffs allege that the Defendants manufactured asbestos-containing products; that the Decedent was exposed to asbestos from those products in his work at BIW; and that the Decedent's exposure to asbestos from the Defendants' products was a substantial factor in bringing about his death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Rayrnark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993); *Mahar v. Sullivan & Merritt, Inc.*, BCD-CV-10-21 (Bus. & Consumer Ct. Sept. 18, 2013, *Nivison, J.*)

6

This Court has had the opportunity to evaluate the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product in asbestos litigation. *Mahar v. Sullivan & Merritt, Inc.*, BCD-CV-10-21 (Bus. & Consumer Ct. Sept. 18, 2013, *Nivison, J.*). To be successful, a plaintiff must establish *prima facie* evidence of causation. In actions concerning strict liability or negligence resulting from contact with asbestos, such showing is made when a plaintiff demonstrates both medical causation and product nexus. Medical causation requires that "plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury." *Id.* (quoting 63 Am. Jur. 2d *Products Liability* § 70 (2001)). Product nexus requires:

> [T]hat the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.*


## IV.    DISCUSSION

### A. Product Nexus

The Court on, April 24, 2015, issued its decision on similar motions for summary judgment in *Jones v. Air & Liquid Systems Corp., et al.*, BCD-CV-12-79 (Bus. & Consumer Ct. Ap. 24, 2015, *Murphy, J.)*[6] The Court granted motions made by Defendants Foster Wheeler, LLC, Warren Pumps, LLC, and Imo Industries. Inc. as to both the plaintiff's negligence and strict liability claims. After reviewing the arguments and record set forth in this matter, the Court can see no reason to apply a different

---

[6] On April 25, 2015, the Court issued a consistent opinion in *Grant v. Air & Liquid Systems Corp., et al.*, BCD-CV-13-02 (Bus. & Consumer Ct. Apr. 25, 2015, *Murphy, J.).*

7

analysis to the negligence claim in this case. However, based on the evidence presented in this particular case, the Court reaches a different conclusion.

The issue in this case, like in *Grant* and *Jones,* is whether the Plaintiffs have presented *prima facie* evidence that the Decedent had sufficient contact with the Defendants' products to support an inference that those products caused his harm. To survive the Defendants' motions for summary judgment, the Plaintiff must demonstrate that: (1) the Defendants' products were at BIW at the time of the Decedent's employment; (2) The Defendants' products contained asbestos; and (3) the Decedent had personal contact with asbestos from the Defendants' products. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product[s] w[ere] a 'substantial factor'[7] in causing the Plaintiff's damages is for the jury."[8] *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.,* 2009 ME 46, ¶ 19, 969 A.2d 935 (noting "[p]roximate cause is generally a question of fact for the jury").

It is clear under Maine law that evidence indicating that the Defendants' products and equipment were present at the time the Decedent was employed is insufficient to establish product nexus. *Buck v. Eastern Refractories Co., Inc.,* OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cnty., Jul. 23, 2007) (Gorman, J.). In both *Grant* and *Jones*, plaintiffs presented no direct or circumstantial evidence that the decedents had contact with the

---

[7] In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse,* 300 A.2d 491, 495-96 (Me. 1973).

[8] The court in *Boyden v. Tri-State Packing Supply* noted, "whether that evidence is sufficient to prove that the manufacturers products were a substantial factor in causing the decedent's illness [was] a question that requires a comparison and weighing of the evidence, a function left to the trier of fact." 2007 Me. Super. LEXIS 47, 13 (Me. Super. Ct. Feb. 28, 2007).

8

contaminated products or that the defendants respective products caused the decedents' illnesses. For example, the record in each of those cases included two types of testimony. First, the records included testimony from employees who generally knew of the decedents but could not recollect working with the decedents directly and could not recollect a time that the decedents worked with or near the defendants' products. Second, although the records in those cases included the testimony and report of William Lowell, Mr. Lowell was not personally familiar with those decedents' work history and therefore could only speculate as to what the decedent likely would have done based on his experience at BIW.

In *Grant* and *Jones*, this Court determined that merely establishing, through speculative evidence, that the Decedent *might* have had contact with the Defendants' products is insufficient to satisfy the party's burden at the summary judgment stage of the proceedings. However, in this case, the Plaintiffs have presented affidavits and testimony, which demonstrates that Mr. Douglass was likely exposed to asbestos through his contact with the Defendants' products while employed at BIW. For example, Mr. Douglass testified[9] that he spent time aboard ships and in the machinery spaces.[10] (Pls.' Addt'l S.M.F. ¶ 64.) Specifically, Mr. Douglass testified that he installed staging in the machinery spaces and the environment was often "very dusty." (Pls.' Addt'l S.M.F. ¶¶ 76, 77.)

---

[9] As mentioned above, Mr. Douglass passed away prior to the commencement of this litigation. However, deposition testimony from his Longshoreman's hearing is available. (Defs.' S.M.F. ¶¶ 74, 75; Pls.' Opp. S.M.F. ¶¶ 74, 75.)

[10] Defendants deny this assertion as a mischaracterization of the testimony and claim that Mr. Lowell's statements are speculative.

9

Unlike the decedents in *Grant* and *Jones*, William Lowell knew Mr. Douglass and specifically recalled him working in the machinery spaces on the Yarnell and Gridley. Mr. Lowell testified that while Mr. Douglass worked as a stagebuilder at BIW, the Defendants had asbestos containing equipment on both the Yarnell and the Gridley. (Pls.' Addt'l ¶¶ 69-72.) Because the Decedent in this case can be placed in the machinery spaces of two ships which contained the Defendants' products, and because the Decedents' responsibilities as a stagebuilder likely brought him within close if not direct proximity to the Defendants' asbestos-containing products, the Court finds the evidence is not speculative but circumstantial. The Court is aware that the fact that the Defendants asbestos-containing products were present on the ships where the Decedent worked is insufficient to satisfy the Plaintiffs' burden at this stage of the proceeding. However, the Court finds that the record contains sufficient evidence from which a factfinder could rationally conclude that the Decedent was exposed to the Defendants' products.

Here, while the Plaintiff has not produced direct evidence to establish that the Decedent was exposed to asbestos from the Defendants' products, Plaintiffs have provided sufficient circumstantial evidence from which a factfinder could reach such a conclusion. Mr. Lowell has testified that the Decedent worked in the machinery areas on two specific ships which contained the Defendants asbestos-containing products at the time he was employed. Further, the Decedent's obligations as a stagebuilder would have brought him into contact with that asbestos when removing the staging in the machinery spaces.

10

Thus, viewing the evidence in a light most favorable to the Plaintiffs, the Plaintiffs have established, for the purpose of summary judgment, the necessary nexus between the Decedent and the Defendants' asbestos-containing products. The Court finds that whether the Defendants' products were a substantial factor in bringing about the Decedent's injury is a factual question for a jury. *See Rumery v. Garlock Sealing Techs.*, 2009 me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 Me 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.)[11]

B. Strict Liability[12]

Maine's strict liability statute imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products. "The Law Court has adopted the majority view that a product though faultlessly made, may nevertheless be deemed defective [under 14 M.R.S.A. § 221][13] and subject the supplier thereof to strict liability if

---

[11] Because the Court denies summary judgment as to the negligence claim, the Court also denies Defendants' motion as to the Plaintiffs' loss of consortium claim.

[12] While the Defendants did not brief the issue of strict liability, the Court is under the impression that they have moved on all counts set forth in the Plaintiffs' Complaint.

[13] Maine's product liability statute, 14 M.R.S. § 221 (2014), lays out the essential elements of the cause of action asserted against a seller:

> (1) the named defendant sold the goods or products;
> (2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;
> (3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;
> (4) the defendant was engaged in the business of selling the goods or products;
> (5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and
> (6) the plaintiff or the plaintiff's property suffered physical harm.

*See Richards v. Armstrong Int'l, Inc.*, BCD-CV-10-19 (Bus. & Consumer Ct. Jan. 25, 2013, *Nivison J.)* 14.

11

it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and no warning is given." *Burns v. Wayne-Dalton Corp.*, 2009 WL 3754132 (citing *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 196 (Me. 1990) (citation omitted)). The theory developed by the Plaintiff is that the use of asbestos insulation in conjunction with the Defendants' products was foreseeable to the Defendants. Thus, liability for the failure to warn of the dangers of asbestos should attach. For the reasons below, the Court disagrees.

In a defective product case based on a failure to warn, a plaintiff must show that "(1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *See id.* (citing *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 23 n.7, 19 A.3d 823). Such an articulation of the duty to warn would, at first, seem to indicate that any foreseeable use of asbestos in conjunction with Defendants' products would be a fundamental issue in determining whether there is a duty to warn. The Maine Superior Court in *Rumery v. Garlock Sealing Technologies, Inc.*, noted:

> Importantly, however, the issue of knowledge or foreseeability relates to whether a manufacturer or supplier knew of the dangers of its *own* product at the time of distribution. Although the Law Court does not appear to have addressed this issue directly, the Law Court has described a manufacturer's liability for failure to warn in terms of the manufacturer's responsibility to alert consumers of defects inherent in the manufacturer's own products.

2009 Me. Super. LEXIS 73, at *15 (Apr. 24, 2009).

In this case the there is no evidence upon which a reasonable factfinder could conclude that the Defendants' products contained asbestos material when they left the

12

Defendants' respective manufacturing facilities. The undisputed facts indicate that it was not the Defendants' products, but the dangers inherent in the asbestos-containing insulation, a product that the Defendants did not manufacturer or supply, that proximately cause the Plaintiff's damages. In Maine, there is no duty imposed on a manufacturer to "warn about the dangerous propensities of other manufacturer's products." *Id.*; *see also Richards v. Armstrong Int'l, Inc.,* BCD-CV-10-19 (Bus. & Consumer Ct. Jan. 25, 2013, *Nivison J.)* (In Maine, manufacturers do not owe a duty to warn of the dangers inherent in third-party products). Thus, the Defendants cannot be held legally responsible for damages caused by asbestos-material incorporated in or applied to their respective products after said products left the Defendants' control.

## V.    CONCLUSION

Based on the foregoing, the entry shall be:

Defendants' respective motions for summary judgment are DENIED as to the negligence and loss of consortium claims and GRANTED as to the strict liability claims.

This Order may be noted on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

| | |
|---|---|
| **7/9/15** | **/s** |
| **DATE** | **M. Michaela Murphy, Justice**<br>**BUSINESS AND CONSUMER COURT** |

13

**Cynthia & Kirk Douglass v. Air & LIquid Corp, et al.**

**BCD-CV-13-35**

**Cynthia & Kirk Douglass**

    **Plaintiffs**

    Counsel:                    *Kevin Noonan, Esq.*
                                     Four Union Park
                                     Topsham, ME 04086-5000

**Aurora Pump Company,**
**Foster Wheeler LLC,**
**Warren Pumps and**
**IMO Industries Inc.**

    **Defendants**

    Counsel:                    *Steven Wright, Esq.*
                                       615 Congress Street, Suite 15
                                     PO Box 4077
                                     Portland, ME 04101

**New England Insulation Company**

    **Defendant**

    Counsel:                    *Kip Adams, Esq.*
                                       75 Arlington St. Suite 500
                                     Boston, MA 02116